OPINION OF THE COURT
Andrew V. Siracuse, J.
Plaintiff has pleaded a case under Labor Law § 240 (1), the “Scaffold Law,” and defendant Allied Builders[1] has sued Baker Mechanical Systems, a subcontractor under whose direction plaintiff was working, for common-law and contractual indemnification. Plaintiff, a pipe fitter, was a contract employee, working at the site pursuant to an arrangement between Pay Force, his direct employer, and Baker Mechanical Systems; at the time, it should be noted, this latter firm was known as Fairport Mechanical Corporation. He was standing on a stepladder, was not otherwise supported or tethered, and was engaged in drilling holes in a concrete block wall in order to insert gas pipes. The drill bit attached to the air hammer would now and then become jammed in the block. There are several ways to free the bit in these circumstances: one can remove the bit from the air hammer and then tap it gently to dislodge it from the wall; this is the method preferred by the defendant’s witnesses. Alternatively, the air hammer can be run and the bit extracted, or the worker can simply jerk out the air hammer bodily.
The incident at issue began with the air hammer’s becoming jammed. Mr. Corrado chose to jerk the tool out, which was his usual course of action when the bit became jammed. As he pulled at the air hammer the ladder moved, and Mr. Corrado and the ladder both fell to the floor.
Mr. Corrado has moved for summary judgment on liability, and the defendant has opposed the motion and cross-moved for indemnification against the subcontractor. The court hereby grants both motions.
The defendant has argued that Mr. Corrado’s action was the sole proximate cause of the accident, and in opposing summary judgment cites Weininger v Hagedorn & Co. (91 NY2d 958), a *782 case which has sparked substantial litigation and elicited much discussion, including an article by this court[2] and consideration in the case of Secord v Willow Ridge Stables (179 Misc 2d 366). As this court has thus repeatedly pointed out, the holding in Weininger must be understood in the context of its facts, which are not fully described in the decision of either the Appellate Division or Court of Appeals:
“The record on appeal, however, shows that there was evidence before the court that plaintiff [Weininger] was standing on the crossbar of the ladder, a misuse of the device. The omission of this key fact from all the written decisions is surprising, because it is the best explanation of the Court of Appeals holding. While the testimony was questionable, it would clearly have been possible for a reasonable jury to conclude that the accident was caused by this misuse rather than any defect in the ladder itself or its placement or operation; this issue of fact would preclude a directed verdict or summary judgment” (179 Misc 2d 366, at 370-371, supra).
In the present case the plaintiffs alleged misconduct was trying to remove the air hammer in a way that put stress on the ladder and led to its fall. This can hardly be considered a misuse of the ladder itself comparable to the claim in Weininger (supra). Indeed, given that plaintiff testified that he customarily jerked the air hammer out, it suggests that the ladder or its placement was inadequate to withstand the forces to which it would normally be subjected. Had the plaintiff been working on a scaffold, for example, this accident would most likely never have happened.
That plaintiff precipitated the accident by his own actions does not tell against him. In many — perhaps even a majority — of scaffold law cases the chain of events leading to the accident is set in motion by the plaintiff. This is exactly what the statute anticipates: in enacting section 240 (1) the Legislature, mindful of the extra dangers posed by working at a height, required owners and general contractors to supply, maintain and place safety devices that save workers from the consequences of both unavoidable accidents and the workers’ own negligence. Comparative negligence has not been permitted as a defense to section 240 (1) actions since Koenig v Patrick Constr. *783 Corp. (298 NY 313), and it cannot be brought in through the back door by barring claims on the grounds that the accident would not have happened but for the initial act of the employee.[3]
As plaintiff properly points out, this case most strongly resembles the important Court of Appeals decision in Gordon v Eastern Ry. Supply (82 NY2d 555), where the plaintiff, standing on a ladder, was propelled to the floor when the ladder tipped and he was sprayed by the defective sandblaster that he had been using. Much of the Court of Appeals decision was devoted to the recalcitrant worker defense, since the plaintiff had been instructed to use a scaffold rather than the ladder. The Court rejected this defense and ruled that
“[Defendants’ failure to provide plaintiff with a safe scaffold or ladder while he sandblasted the railroad car was a substantial cause leading to his fall and the injuries he sustained. Injury was a foreseeable result of cleaning railroad cars from an elevated position, and a fall and injury occasioned by an allegedly defective sandblaster used in the process is not of such an extraordinary nature that the defendants’ responsibility for the injury [under section 240 (1)] should be severed” (82 NY2d, supra, at 562).
Although the tort-like language used by the Court of Appeals is perhaps misleading, this case clearly falls within the rule set out by Gordon, which is that only those risks that are essentially unrelated to the ordinary work process — such as the irrational misuse of the ladder alleged in Weininger (supra)— might permit a defendant to avoid section 240 (1) liability. Here the likelihood that removing a stuck air hammer from the wall might unbalance a ladder was clearly not so remote that the defendant can rely on it to cut off its responsibility. In fact, the plaintiff’s case here is significantly stronger than Gordon’s, because, unlike Gordon, he was using precisely the safety device he was instructed to use.
The plaintiff is thus entitled to summary judgment as to liability. The defendant is similarly entitled to contractual indemnification from third-party defendant Baker Mechanical Systems. The recent amendments to the Workers’ Compensa *784 tion Law have closed off the defendants’ claim for common-law indemnification, as it cannot be contended that Mr. Corrado has suffered the type of grave physical injury of which those amendments speak. Contractual indemnification, however, is appropriate. Baker argues that there remains a question of fact as to its own fault in the accident and cites the contract with Allied Builders to show that it must indemnify only if it is found to have been at fault. The very passage it cites, however, refutes its claim; Baker must indemnify Allied for all losses, claims, actions, etc., arising directly or indirectly from its work, provided that the allegation
“(1) involves or is attributable to personal injury, sickness, disease or death * * * and/or (2) is caused solely, in whole or in part, by any act or omission on the part of the Subcontractor.”
Baker believes that Allied must show that Baker’s act or omission caused the injury.
The clause at issue, however, uses the language “and/or,” which Baker erroneously construes as meaning “and.” It is uncontested that Mr. Corrado’s claim is for personal injury. That being the case, it is not necessary under the terms of the indemnification clause for Allied to establish Baker’s culpable act or omission.
There must be a trial on the matter of damages, but Mr. Corrado is entitled to summary judgment on liability, without costs or disbursements, and Allied is entitled to indemnification from Baker. In view of the insubstantiality of Baker’s defense, Allied is entitled to costs from the third-party defendant. Counsel for plaintiff may prepare a single order encompassing both aspects of this decision.

. Webster Plastics, Inc., was also sued, but was not apparently involved in any ownership or contractual capacity, and by stipulation the action against Webster Plastics is being discontinued.

. From Absolute to Relative Liability: Recent Changes in the Scaffold Law, NYLJ, Mar. 10, 1999, at 1, col 1 (abridged version), <http:// www.courts.state.ny.us/reporter/webdocs/siracuse.html> (complete).

. On this subject see generally, The Lowering Threshold of Recalcitrance: Recent Changes in the Scaffold Law, part 2 (NYLJ, May 10, 1999, at 1, col 1 [abridged version], <http:Wwww.netacc.net/~amsir/Contents/ 1999_recaí_art.html> [complete]).