Frankson v Philip Morris Inc. (2004 NY Slip Op 50606(U))

[*1]

Frankson v Philip Morris Inc.

2004 NY Slip Op 50606(U)

Decided on June 22, 2004

Supreme Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on June 22, 2004

Supreme Court, Kings County
GLADYS FRANKSON, as Administratrix of the Estate of HARRY WILLIAM FRANKSON, and GLADYS FRANKSON, Individually, Plaintiffs,
against
PHILIP MORRIS INCORPORATED, BROWN & WILLIAMSON TOBACCO CORPORATION, Individually and as Successor by Merger to the AMERICAN TOBACCO COMPANY, R.J. REYNOLDS TOBACCO COMPANY, LIGGETT & MYERS TOBACCO COMPANY, n/k/a LIGGETT GROUP, INC., THE TOBACCO INSTITUTE, INC. and THE COUNCIL FOR TOBACCO RESEARCH-USA, INC., Defendants.
24915/00

Herbert Kramer, J.
The issue presented in this smoker suit, which is of apparent first impression in this State, is whether a defendant can "waive" the affirmative defense of comparative fault on the eve of trial and thus block plaintiff's request for a charge on this issue.[FN1]
At trial, plaintiff set out to demonstrate that the decedent was unable to heed the warnings about the dangers of cigarette smoking because he was addicted and unable to quit. Defendants attempted to show that the decedent would have been able to quit if he chose to do so and proceeded in voir dire [FN2] and in opening statements [FN3] and in the defense case in chief [FN4] and in [*2]summation [FN5] to show that it was the smoker's decision to continue smoking and not the conduct of the tobacco companies that was responsible the smoker's lung cancer.
Plaintiff requested a charge on comparative fault. Defendants, in opposition, claimed that only they should be able to decide whether to raise this affirmative defense and argued that the decedent's conduct was relevant only with respect to the question of whether plaintiff met her burden of proving proximate cause.
 To fully address this novel issue, we need to first consider the delicate interplay between the concepts of comparative fault and proximate cause.
 Comparative Fault
New York's comparative fault legislation [FN6] has rounded the quarter century mark and many of the early concerns with respect to its application have been resolved. "The phrase [culpable conduct] was 'used instead of 'negligent conduct' because this article [is intended to] apply to cases where the conduct of one or more of the parties will be found to be not negligent, but will nonetheless be a factor in determining the amount of damages . . .'The defendant's culpable conduct may include, but is not necessarily limited to, negligence, breach of warranty, a violation of statute giving rise to civil liability, conduct giving rise to liability upon a theory of strict liability, and intentional misconduct'." Arbegast v. Board of Education of South New Berlin Cent. School, 65 N.Y.2d 161, 167 (1985).[FN7]
[*3]
Although comparative fault is an "affirmative defense to be pleaded and proved by the party asserting the defense," CPLR §1412, Bycel v. Freeman, 95 Misc.2d 270(Sup. Court, N.Y. Co. 1978), trial courts have refused plaintiffs' requests to so charge at their peril. Gonzalez v. Medina, 69 A.D.2d 14, 20 (lst Dept. 1979)(error not to have instructed the jury on comparative fault in accordance with the plaintiff's request); Runfola v. Bryant, 127 A.D.2d 972(4th Dept. 1987)(same); Meyer v. Ambassador Trucking corp, 72 A.D.2d 556 (2d Dept. 1979)(in face of trial court's refusal of plaintiff's request for a charge on comparative fault, Court held that "It is beyond cavil that "All courts are required . . . to take judicial notice of the Constitution, the public statutes and the common law of the forum . . . Hence, it was error for the trial court to refuse to charge on the applicable law." ). See also Grisoff v. Nicoletta, 107 A.D.2d 1047,1048(4th Dept. 1985)("court's failure to instruct the jury regarding principles of comparative negligence , deprived them of a fair trial.")
Indeed the Second Department recently held that "It is well settled that instruction on the question of comparative negligence should be given to the jury where there is any valid line of reasoning or permissible inferences which could possibly lead rational individuals to the conclusion of negligence on the basis of the evidence presented at trial , , , Furthermore whether a plaintiff is comparatively negligent is almost invariably a question of fact and is for the jury to determine in all but the clearest of cases." Shea v. New York City Transit Authority, 289 A.D.2d 558, 559 (2d Dept. 2001);Gallo v. 800 Second Operating Inc., 300 A.D.2d 537, 538(2d Dept. 2002).
Proximate Cause
"The concept of proximate cause, or more appropriately legal cause, has proven to be an elusive one, incapable of being precisely defined to cover all situations . . . Depending on the nature of the case, a variety of factors may be relevant in assessing legal cause." Derdiarian v. Felix Constr Co, 51 N.Y.2d 308, 314-315 (1980) Nonetheless, all a plaintiff need show is that the [*4]defendant's conduct was a substantial factor in bringing about the injury. Nallan v. Helmsley-Spear, Inc., 50 N.Y.2d 507, 520(1980)("It is plaintiff's burden to show that defendant's conduct was a substantial causative factor in the sequence of events that led to . . . injury." )This showing need not eliminate every other factor that may have contributed to the cause of the injury. Galioto v. Lakeside Hospital, 123 A.D.2d 421, 422 (2d Dept. 1986).( "It is well settled law that in order for a plaintiff to recover damages, a defendant's negligence need not be the sole cause of the injury; it need only have been a substantial factor in bringing the injury about.".)
"Proximate cause serves a somewhat different role in products liability cases than in ordinary negligence actions. To establish proximate cause in a products liability case, a plaintiff must show that the defect in the product was a substantial factor in causing the injury. [The] causal connection [is] not automatically severed by . . . intervening conduct unless that conduct was, as a matter of law, extraordinary under the circumstances, not foreseeable in the normal course of events or independent of or far removed from [the defendant-manufacturer's ] conduct." Nutting v. Ford Motor Co., 180 A.D.2d 122, 131(3d Dept. 1992). In Nutting, the driver continued to knowingly use a car whose engine had stalling problems.. A fatal accident occurred when this car drifted into the path of an oncoming vehicle as the driver was attempting to cope with the stalled engine. Nonetheless, the Court declined to find, as a matter of law, that the driver's failure to correct the problem broke the chain of causation, but rather held that such conduct is relevant to issues of intervening cause and apportionment of fault. Id.
The chain of causal connection is, indeed, sturdy and not readily susceptible to disruption by intervening conduct. In one recent instance, a drunk driver drove his car off an exit ramp at thirty five miles an hour, straight into a utility pole. According to the Court of Appeals, plaintiff's decedent's conduct did not affect the auto manufacturer's duty to "produce a product that does not unreasonably enhance or aggravate a user's injuries." Alami v. Volkswagen of America Inc., 97 N.Y.2d 281,287(2002). Since Volkswagen did not even contest the expert's findings with respect to the crash worthiness of the vehicle, The Alami Court strongly disagreed with the Appellate Division's determination that intoxication was, as a matter of law, the "sole proximate cause" of the accident and decedent's injuries and reversed. The dissent, vigorously protesting, pointed out that this case falls squarely within the preclusion doctrine of Barker v. Kallash, 63 N.Y.2d (1984) and Manning v. Brown, 91 N.Y.2d 116 (1997), which denies judicial relief to those injured in the course of committing a serious criminal act and does not permit the apportionment of fault between the parties.
As the discussion above demonstrates, where fault on the part of the plaintiff is implicated, the only time that fault is relevant exclusively to proximate cause and not to an assessment of comparative fault is where, as a matter of law, that fault is the sole proximate cause of the harm or where because of a legal impediment, plaintiff's fault cannot be considered unless it is shoe horned into the case by being characterized as the sole proximate cause of the injury. [FN8] As one commentator aptly noted, the sole proximate cause defense does little more than divert the jury's attention from the ultimate issue of the defendant's relative fault." John G. Phillips, The Sole Proximate Cause "Defense"; A Misfit in the World of Contribution and Comparative Negligence, 22 S.Ill. U.L.J. 1,2(Fall, 1997).
This Court agrees.
[*5]
"Waiver" of the Affirmative Defense of Comparative Fault
In light of these principles, we must determine the legal effect, if any, of the defendant's attempted "waiver" of the defense of comparative fault. Where, as here, comparative fault was pleaded as part of the defendant's answer, any alteration in that pleading would have to be made by way of a motion to amend the pleading. CPLR §3025. Since the time for amendment as of right has long since passed, CPLR §3025(a), the amendment could only be accomplished by leave of the court. Unlike a waiver, which may arguably be accomplished solely through the conduct or statements of the waiving party, amendment of a pleading at this stage is not self actualizing.[FN9]
This Court is aware of the hoary principal that amendments of pleadings are to be freely granted even in the middle of trial or after trial, however such permissive leave should not be freely given in the face of substantial "prejudice of a special right lost in the interim, [and] a change in position." Ward v. City of Schenectady, 204 A.D.2d 779, 781 (3d Dept. 1994).
Here, this Court was not provided with one scintilla of explanation for the fact that defendant waited until trial commenced to alter their defensive direction. See e.g. Fleet Factors Corp., v. Van Dorn Retail Management, Inc., 180 A.D.2d 556 (lst Dept. 1992) Moreover, extensive discovery was had in this case. Numerous depositions were taken and interrogatories propounded undoubtedly in reliance upon the fact that the plaintiff's decedent's fault was to be placed in issue and, in fact, was placed in issue.
 The decedent's fault which in this case meant his decision to continue smoking in the face of the warnings, was imbedded in this case from jury selection through summations. Thus even assuming, arguendo, that the defendant's argument that "it's our defense and we're allowed to waive it" had merit, the question remains, was this Court obligated nonetheless to charge comparative fault upon the request of the plaintiff? Put more succinctly, the question is whether a court is obligated to charge comparative fault even in the absence of a pleading containing this affirmative
defense? [FN10]
This court holds that where, as here, comparative fault is a pivotal issue in the case, the Court does not need the defendants' blessings to so charge,[FN11] and, in its discretion, can certainly deny a request to amend the pleadings. At first glance, it might seem a bit unjust to impose the affirmative burden of proving the plaintiff's fault upon the defense. However, where, as here, the question of the plaintiff's fault is very much in the case, it is the Legislature and not this Court that has made that determination.
The defendants' motion for a new trial upon this ground is denied.[FN12]
[*6]
This constitutes the decision and order of the Court.
J.S.C.
Footnotes

Footnote 1: Just before voir dire commenced in this smoker suit the defense, with vigorous opposition from the plaintiff, "waived" its affirmative defense of comparative fault At that juncture, in response the Court merely said "Thank you." Plaintiff opposed and indicated that it would be forwarding a memorandum of law explaining why comparative fault would be a necessary charge in the case and indicated that they would be requesting this charge. 

Footnote 2: "Of course, we would never seat a jury of people who didn't believe in personal responsibility. We get taught that as children. We teach our children to take responsibility for their actions. In this trial the fact that Mr. Frankson was injured by Lucky Strikes, the fact that he died as a result of smoking Lucky Strikes cigarettes, the fact that he died as a result of his decision to smoke forty years, that doesn't entitle him to money . . ." 

Footnote 3:Now one of the things you're going to hear in this case is Mr. Frankson was warned at a time and absolutely no question, no doubt about it, he was warned at a time that if he had quit would have avoided his cancer, no question about that . 1969. If Mr. Frankson had quit smoking he would have avoided his lung cancer . . . And one of the other things that you will learn in this case is that the warnings, the warnings they didn't make a difference to Mr. Frankson. He didn't change his behavior. He did not quit smoking . . . . First I want to talk about something that [plaintiff's counsel] raised in his opening. He raised it during the jury selection process too. This is the idea that Mr. Frankson was somehow at fault for smoking cigarettes. Plaintiffs are in an odd situation saying Mr. Frankson is somehow at fault, responsible for smoking cigarettes. It's not our position. . . . There is nothing wrong with buying cigarettes, nothing wrong with selling cigarettes. That is our position. Mr. Frankson exercised his choice. He had a right to exercise that choice. It was his decision . . . Some of you may think he made a wrong choice, but it was his choice to make . . . Now its tragic that Mr. Frankson was motivated to quit smoking too late, but that's the facts of the case."

Footnote 4:Dr. Stephen Bates Billlick a child and adolescent forensic psychiatrist testified that the decedent had the ability to quit smoking, notwithstanding his addiction, but was simply not highly motivated enough to do so.

Footnote 5:In summation the defense argued: "At the end of the day Mr. Frankson did not do that. He wasn't willing to make that decision. He wasn't willing to go and tough out quitting. But that was his decision. It wasn't the Lucky Strike cigarette's decision. And it wasn't American Tobacco Company's decision. It was Mr. Frankson's decision. And for that reason nicotine is not the defect that led to Mr. Frankson's death.

Footnote 6: CPLR section 1411 provides in pertinent part;"the culpable conduct attributable to the claimant or to the decedent, including contributory negligence or assumption of risk, shall not bar recovery, but the amount of damages otherwise recoverable shall be diminished in the proportion which the culpable conduct attributable to the claimant or decedent bears to the culpable conduct which caused the damages."

Footnote 7:Thus, early on, in an expansive decision which broadly described the extent of the defense of comparative fault the First Department said:
 We find no distinction in logic or Dole, which limits application of the rules merely to "accident" cases to the exclusion of all other causes pursued under a theory of tort liability. . . It is "pragmatically sound, as well as realistically fair" to permit apportionment among "joint or concurrent tort-feasors regardless of the degree or nature of the concurring fault.
 * * *
 . . . the use of the term 'culpable conduct' in CPLR 1411, rather than 'negligent conduct, presents further support to the view that the legislative intent was to release the concept of damage apportionment from the parochial confines of accident cases and to broaden its application flexibly 'to reach any breach of legal duty or fault . . . including but not limited to negligence in any degree, breach of warranty, strict liability and violation of a statutory duty . . . 'Judicial development of the concept of 'culpable conduct' consistent with the goal of this article . . . is not precluded . . . Harms specifically not mentioned in the act can be included 'if court determines the common law of the state would make the application' . . ." 
Lippes v. Atlantic Bank, 69 A.D.2d 127,136-138Dept. 1979). While the Second Department refused to extend the reach of this decision which applied comparative fault in an action arising out of the "commercial relationship between a factor and his depository bank" to an issue involving the rights and obligations of the parties under a negotiable instrument governed by the UCC, Five Towns College v. Citibank, supra, 108 A.D.2d 420, 434 (2d Dept. 1985), it quoted the above at some length qualifying it only to the extent indicated. See also Coty v. Steigerwald, 262 A.D.2d 946(4th Dept. 1999)(under appropriate facts, comparative fault principles can apply to cause of action for breach of fiduciary duty.)

Footnote 8:We see this in cases decided under the Labor Law where defendants are strictly liable and plaintiff's contributory fault cannot be considered in assessing damages. To avoid the unjust result that flows in the wake of this doctrinaire approach, the courts have found negligent plaintiffs to have been the sole proximate cause of the harm. Weininger v. Hagedorn, 91 N.Y.2d 958(1998);Corrado v. Allied Builders, Inc., 186 Misc.2d 780(Sup Court, N.Y. Co., 2000)(reviewing the record on appeal in Weininger observing that Weininger had misused the ladder by standing on its cross bar.)

Footnote 9:The reason for the requirement of leave of court for the amendment of pleadings after the early stages of the litigation is quite clear. The opposing party, over time, acquires an interest in the pleading by virtue of its reliance upon that pleading in the conduct of discovery and the formulation of its theory of the case. 

Footnote 10:If this question can be answered in the affirmative, then mechanisms for achieving the result exist. The court may, sua sponte, amend the answer to conform it to the evidence, Murph & Fritz's Place, Inc. v. Loretta, 112 Misc.2d 554(N.Y. City Court, 1982), or make a determination that comparative fault is, as a matter of law, part of the case. Meyer v. Ambassador Trucking Corp., 72 A.D.2d 556 (2d Dept. 1979).

Footnote 11: This Court finds that the decision in Kwiatowski v. Bear Sterns & Co., Inc., 2000 WL 640625(SDNY), interpreting New York law, is factually distinguishable.

Footnote 12: The remaining issues raised in this regard are determined in companion decisions decided herewith.