[802 NYS2d 41]

ALEXANDER MORALES, Appellant-Respondent, v SPRING SCAF-
FOLDING, INC., Respondent-Appellant, and PREMIER COM-
PANY et al., Respondents.

First Department, October 11, 2005

## APPEARANCES OF COUNSEL

*Gorayeb & Associates, P.C.*, New York City (*Mark H. Edwards* of counsel), for appellant-respondent.

*Molod Spitz & DeSantis, P.C.*, New York City (*Marcy Sonneborn* and *Alice Spitz* of counsel), for respondent-appellant.

*Law Office of Ted M. Tobias*, White Plains (*Frank V. Kelly* of counsel), for respondents.

## OPINION OF THE COURT

SULLIVAN, J.

This appeal presents the question of whether a construction worker injured in an on-site accident is outside the protection of Labor Law § 240 (1) because he was on a lunch break at the time of the accident. Given the circumstances surrounding the accident, we answer the question in the negative.

Plaintiff, a working foreman for Galicia Contracting, a facade restorer, was injured on August 22, 2001, when he fell approximately eight feet from a sidewalk bridge after the parapet wall of the bridge collapsed. The owners of the building, a multiple dwelling at 148 West 68th Street in Manhattan, defendants Premier Company, United Enterprises, Berdar Equities Co. and Fame Equities and Management Co. (Fame), had hired Galicia to do a building facade repair that included demolition, pointing and caulking. Galicia, in turn, had contracted with Spring Scaffolding, Inc. to erect the sidewalk bridge over the sidewalk where the facade repair would take place and, upon completion of the project, to dismantle it.

As the record shows, Spring had completed erecting the bridge on July 19, 2001, one month before the accident occurred. It

was not hired to maintain or repair the bridge during the course of the construction work or to supervise and control Galicia's workers in their use of the bridge during the repair. The bridge was approximately 50 feet in length and eight feet in height. The outside perimeter of the bridge had a parapet wall composed of eight-by-four-foot plywood sheets, supported by two-by-three-inch wooden rails. The wall was $3^3/8$ inches thick and four feet high.

Plaintiff and his crew of four men had been working at the site for a few weeks. According to plaintiff, on the day of the accident, he ate his lunch on the sidewalk bridge, sitting on an empty bucket. After eating, the building superintendent called to plaintiff to tell him that Galicia had a delivery. Plaintiff alleges that he walked to the edge of the bridge, leaned his hand on the waist-high plywood wall and bent over to see what was being delivered. As he did so, the wall gave way and plaintiff fell to the ground approximately eight feet below. This version of the accident is controverted by the building superintendent, who, at his deposition, testified that he saw plaintiff, concededly six feet tall and weighing approximately 300 pounds, sitting on the top of the sidewalk bridge's parapet wall during the lunch break. According to this witness, plaintiff fell off the bridge to the ground below when the parapet wall gave way.

According to plaintiff, he and his crew used the sidewalk bridge as a staging area, and to keep tools, equipment and materials. The bridge was also used to enter onto Galicia's scaffold, which was stored on the bridge at lunchtime and at night, as were Galicia's tools. Bags of sand were delivered to the bridge; sometimes, plaintiff's crew mixed cement there.

Spring's own structural design specifications, filed with the New York City Buildings Department, show that the parapet wall was to be constructed of one-quarter-inch plywood on two-by-four-inch framing. At his deposition, Spring's general foreman testified, however, that Spring instead used "two-by-three-inch wood along the perimeter of the plywood." Plaintiff's expert, in an affidavit submitted in support of his position on the various motions, was of the opinion that since Spring's construction of the sidewalk bridge violated its own filed design specifications, it was therefore inherently deficient in terms of its structural strength and was incapable of withstanding the required load, 300 pounds per square foot, according to the design. The expert also stated that the parapet was not of the required height.

Plaintiff commenced this action to recover for his injuries, alleging violations of Labor Law §§ 200, 240 (1) and § 241 (6), as well as common-law negligence. At the close of discovery, Spring moved for summary judgment dismissing the complaint, arguing, inter alia, that it was not a person liable under Labor Law § 240 (1) and § 241 (6) since it was neither a contractor nor an owner, or an agent of either, within the purview of the Labor Law. The other defendants also moved for summary judgment dismissal. Plaintiff cross-moved for partial summary judgment on liability against all the defendants on his Labor Law § 240 (1) cause of action. Supreme Court denied all the motions, finding as to plaintiff's cross motion an issue of fact as to whether plaintiff "was on his lunch break" or had already "finished his lunch" when the accident occurred. Plaintiff appeals and Spring cross-appeals. We modify to grant plaintiff's cross motion as against the defendant owners and Spring's motion to the extent of dismissing the Labor Law § 240 (1) and § 241 (6) causes of action as against it.

Labor Law § 240 (1), commonly referred to as the "scaffold law" (*Gordon v Eastern Ry. Supply*, 82 NY2d 555, 559 [1993]), insofar as pertinent, states:

> "All contractors and owners . . . in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or a structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

In enacting this statute, the legislative intent was to protect workers "by placing 'ultimate responsibility for safety practices at building construction jobs where such responsibility actually belongs, on the owner and general contractor' (1969 NY Legis Ann, at 407), instead of on workers, who 'are scarcely in a position to protect themselves from accident' " (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520 [1985] [citation omitted]). As the *Zimmer* court noted, "this statute is one for the protection of workmen from injury and undoubtedly is to be construed as liberally as may be for the accomplishment of the purpose for which it was thus framed" (*id.* at 520-521, quoting *Quigley v Thatcher*, 207 NY 66, 68 [1912]). The statute imposes absolute liability upon owners, contractors and their agents

where a breach of the statutory duty proximately causes an injury (*Gordon,* 82 NY2d at 559; *Ross v Curtis-Palmer Hydro-Elec. Co.,* 81 NY2d 494, 500 [1993]; *Rocovich v Consolidated Edison Co.,* 78 NY2d 509, 513 [1991]).

■ The fee owner of the building, defendant Premier, a partnership consisting of defendants United Enterprises, Berdar Equities (which was in charge of the repair being done on the building) and Fame, hired Galicia and paid for the work. Thus, for purposes of Labor Law § 240 (1), Premier, United Enterprises, Berdar Equities and Fame are all considered "owners" and are therefore liable for any statutory violation. Spring, hired by Galicia to erect a sidewalk bridge prior to the start of construction, however, is neither a contractor nor an owner. Nor is it a statutory agent of an owner or contractor because, not being permanently present at the construction site and lacking the ability to control the workplace, it is not subject to the Labor Law (*see Russin v Louis N. Picciano & Son,* 54 NY2d 311 [1981]).

As *Russin* held:

> "Although sections 240 and 241 now make nondelegable the duty of an owner or general contractor to conform to the requirement of those sections, the duties themselves may in fact be delegated. When the work giving rise to these duties has been delegated to a third party, that third party then obtains the concomitant authority to supervise and control that work and becomes a statutory 'agent' of the owner or general contractor. Only upon obtaining the authority to supervise and control does the third party fall within the class of those having nondelegable liability as an 'agent' under sections 240 and 241. To hold otherwise and impose a nondelegable duty upon each contractor for all injuries occurring on a job site and thereby make each contractor an insurer for all workers regardless of the ability to direct, supervise and control those workers would lead to improbable and unjust results and would directly contravene the express legislative history accompanying the 1969 amendments to these provisions" (*id.* at 317-318 [citations omitted]; *see also Kopacz v Airco Carbon, Div. of Airco, Inc.,* 104 AD2d 722 [1984]).

Since Spring left the job site upon completion of the sidewalk

bridge and was not scheduled to return until completion of the restoration of the facade, and then only to dismantle the bridge, it does not qualify as an agent under Labor Law § 240 (1) and § 241. At the time of the accident, Spring had no control over the use of the sidewalk bridge or, as shown by its contract with Galicia, responsibility for its maintenance and, indeed, it was not even present at the job site (*see e.g. Brown v Two Exch. Plaza Partners*, 146 AD2d 129, 136 [1989], *affd* 76 NY2d 172 [1990]; *see also Holt v Welding Servs.*, 264 AD2d 562, 564 [1999], *lv dismissed* 94 NY2d 899 [2000]; *Gaddy v Colgate Scaffolding Corp.*, 236 AD2d 333 [1997]).

■ While Spring may not be held liable under Labor Law § 240 (1) or § 241, a sufficient showing has been made to raise triable issues of fact on a common-law negligence theory and its statutory counterpart, Labor Law § 200, based upon improper construction and erection of the sidewalk bridge leading to the collapse of the parapet wall. As the record shows, there is evidence that the parapet wall was not of the requisite height. Administrative Code of the City of New York § 27-1021 (b) (6) (sidewalk sheds) mandated that the parapet plywood wall be "at least three feet six inches [42 inches] high." Industrial Code (12 NYCRR) § 23-1.18 (b) (2) contains the same minimum 42-inch height requirement. Spring's general foreman testified that the four-foot parapet wall extended 10 inches below the bridge's platform, making it 38 inches high, four inches shorter than required by Code. Furthermore, the parapet wall also violated Spring's own design specifications submitted to the Buildings Department, which showed that the parapet wall would be constructed of one-quarter-inch plywood on two-by-four-inch framing. At his deposition, Spring's foreman testified that it used "two-by-three-inch wood along the perimeter of the plywood" at the parapet wall, instead of two-by-four-inch wood framing.

According to plaintiff's expert, as a result of these Code violations and the departure from the filed design, the sidewalk bridge was constructed negligently. Spring's "Plan/Work Approval Application" submitted to the Buildings Department called for a "Heavy Duty Sidewalk Shed [Bridge] 50' During Facade Repair," intended to have a "300 PSF [pounds per square foot] Live Load" capacity. According to plaintiff's expert, the sidewalk bridge did not have that capacity. Had the bridge been built according to proper specification, he concluded, the accident would not have occurred. Thus, Spring's motion with

regard to the common-law negligence and Labor Law § 200 claims against it was properly denied.

In denying plaintiff's cross motion for partial summary judgment on liability under Labor Law § 240 (1) based on the existence of a question of fact as to whether plaintiff was on his lunch break, Supreme Court relied upon the Second Department's decision in *Keenan v Just Kids Learning Ctr.* (297 AD2d 708 [2002]), which held that a workman's injury that occurred during his lunch break fell outside Labor Law § 240 (1). The Departments have split on whether section 240 (1) applies to a lunch break accident. While the issue is one of first impression in this Court, in *Kouros v State of New York* (288 AD2d 566 [2001]), the Third Department applied the statute to a worker who was leaving the work area to go on a lunch break. In arguing that whether he was on his lunch break at the time of the accident is irrelevant, plaintiff cites *O'Connor v Serge El. Co.* (58 NY2d 655 [1982]), in which the Court of Appeals extended coverage under an indemnity agreement to a lunch break accident. *O'Connor*, however, never addressed the issue under the Labor Law.

In the factual context of this case, we conclude that Labor Law § 240 (1) applies to the lunch break accident. As the record shows, the sidewalk bridge, where the lunch break was taking place, was used by the facade repair workers as a staging area, for storing equipment and mixing cement and as an entryway onto the scaffolding. Whether plaintiff was still on his lunch break or had finished lunch, eventually he would return to the scaffold, which was stored on the bridge during the lunch break, to do more pointing work. Labor Law § 240 (1) requires that sidewalk bridges be built "so as to provide workers with proper protection" (*Jablonski v Everest Constr. & Trade Corp.*, 264 AD2d 381, 382 [1999]). Clearly, on this record, the bridge in question failed in this regard as a matter of law.

Nor is there a view of the evidence to support a finding that plaintiff's conduct was the sole proximate cause of the accident (*see e.g. Weininger v Hagedorn & Co.*, 91 NY2d 958 [1998]; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280 [2003]). Unlike *Weininger*, where plaintiff stood on the crossbar of a ladder (*see Corrado v Allied Bldrs.*, 186 Misc 2d 780, 782 [2000]), and *Blake,* where the jury implicitly found that the plaintiff used an extension ladder without locking the extension clips, there was no misuse of safety equipment. Even if plaintiff had been sitting on the parapet wall, that would not constitute

misuse. The sidewalk bridge was an inadequate safety device that was improperly and negligently constructed in violation of applicable codes and rules. At most, plaintiff's conduct would constitute negligence, not the sole proximate cause (*see Morin v Machnick Bldrs.*, 4 AD3d 668 [2004]). It is by now well settled that a diminishment of the defendants' liability under the doctrine of comparative negligence is inapplicable in cases involving a violation of Labor Law § 240 (1). "The policy purpose underlying Labor Law § 240 is to impose a 'flat and unvarying' duty upon the owner and contractor despite any contributing culpability on the part of the worker" (*Bland v Manocherian,* 66 NY2d 452, 461 [1985], quoting *Zimmer v Chemung County Performing Arts,* 65 NY2d at 521).

Accordingly, the order of the Supreme Court, Bronx County (Yvonne Gonzalez, J.), entered February 20, 2004, which, to the extent appealed from, denied defendant Spring Scaffolding, Inc.'s motion for summary judgment dismissing the complaint against it and plaintiff's cross motion for partial summary judgment as to liability on his Labor Law § 240 (1) claim, should be modified, on the law, to grant Spring's motion to the extent of dismissing the Labor Law § 240 (1) and § 241 (6) causes of action against it and plaintiff's cross motion as against defendants Premier Company, United Enterprises, Berdar Equities Co. and Fame Equities and Management Co., and, except as thus modified, affirmed, without costs or disbursements.

MAZZARELLI, J.P., MARLOW, ELLERIN and CATTERSON, JJ., concur.

Order, Supreme Court, Bronx County, entered February 20, 2004, modified, on the law, to grant Spring Scaffolding, Inc.'s motion for summary judgment to the extent of dismissing the Labor Law § 240 (1) and § 241 (6) causes of action against it and plaintiff's cross motion for partial summary judgment as to liability on his Labor Law § 240 (1) claim as against defendants Premier Company, United Enterprises, Berdar Equities Co. and Fame Equities and Management Co., and, except as thus modified, affirmed, without costs or disbursements.