■ William Fabian Hoyos, Respondent, v NY-1095 Avenue of the Americas, LLC, Appellant, et al., Defendant. (And a Third-Party Action.) [67 NYS3d 597]—

Order, Supreme Court, New York County (Debra A. James, J.), entered March 24, 2016, which, to the extent appealed from as limited by the briefs, denied the motion of defendant NY-1095 Avenue of the Americas, LLC (NY-1095) for summary judgment dismissing plaintiff's claims under Labor Law §§ 240 (1), 200 and common-law negligence, and granted plaintiff's cross motion for summary judgment as to liability on the Labor Law § 240 (1) claim, affirmed, without costs.

Plaintiff, a painter employed by a subcontractor hired by defendant Structure Tone in connection with a renovation proj-

ect, was injured when he slipped or fell off an elevated loading dock. The accident occurred as plaintiff stood in line with other construction workers, waiting to sign a security log and obtain a pass that would allow him to enter into the building where he was working. The loading dock, which was approximately four feet off the ground, had no guardrails, chain, rope, or other indication where its platform ended and the ledge began. When the accident occurred, at approximately 6:30 a.m., the dock was overcrowded with workers reporting for work. The dock, located in a service entrance, was the sole designated means for all construction workers to gain access into the 42-story commercial office building owned by NY-1095 and managed by nonparty Equity Office. Access to the loading dock itself was through a sliding garage door that remained locked until it was opened by building security in the morning.

At the time of the accident, plaintiff had been working on the construction project for approximately one month. His particular assignment was to paint several of the floors that had been renovated by Metropolitan Life Insurance Company (MetLife), one of the building's tenants. The morning of the accident, plaintiff was reporting for work and following the building's usual sign in procedure, which required that he and any other construction workers entering the building use the service entrance. None of the contractors were allowed to use the lobby to gain access into the building. The loading dock led to a ramp at the top of which was a guard who sat at a small security desk.

Since construction workers were not allowed to enter through the main entrance the same way tenants do, when the accident occurred, the loading dock was crowded with "quite a few" workers on line waiting to sign in. Only after signing in with the security guard and obtaining a pass would plaintiff (or any of the other construction workers) be allowed to gain access to the interior of the building.

NY-1095's office lease agreement with MetLife, dated December 19, 2006 (lease), has several exhibits, schedules and attachments that are incorporated into and made a part of the lease. Particularly germane to the issues raised in this appeal is Exhibit E-2 to the lease, "Alteration Rules and Regulations," which includes "Contractor Rules and Regulations for Construction Projects." These rules and regulations set forth standards and procedures that had to be followed so as to insure that other tenants of the building were not inconvenienced by the construction. Among the owner's requirements were that all workers of the various contractors had to use the loading dock and freight elevator at all times; a prohibition against any contractor setting up "shop" outside a particular tenant's area,

unless the owner approved of an alternate "shop" area; and a requirement that contractors' regular, weekly job meetings be scheduled so that members of the owner's management team could attend.

Supreme Court did not err in finding that plaintiff was covered under Labor Law § 240 (1) and granting plaintiff's motion for summary judgment. Labor Law § 240 (1) requires that site owners, contractors and their agents provide safety devices and that they be "constructed, placed and operated" to provide workers with proper protection. Plaintiff is firmly within the protected class because he is a painter and was working for a subcontractor that was hired in connection with a construction/renovation project at the building that NY-1095 owns. Although the owner seeks to remove plaintiff from the protections of Labor Law § 240 (1), on the basis that plaintiff was not "working" at the time of the accident and he was in street clothes, those facts do not dictate whether an injury is within or without the protections of the Scaffold Law. This is not a situation where the plaintiff was injured after he had already completed an enumerated activity (*Beehner v Eckerd Corp.*, 3 NY3d 751 [2004] [job completed, worker merely retrieving serial and model numbers from unit]), nor is it a situation where the task was not an enumerated activity, or even if it was, that it had not yet commenced (*Simon v Granite Bldg. 2, LLC*, 114 AD3d 749 [2d Dept 2014] [the plaintiff, hired to hang wall paper, was injured when the vehicle, in which he was riding, skidded on ice in garage]).

Here, plaintiff, who had been working on this construction project for a month, was following the rules and regulations of the owner and building protocol that he wait outside a closed, gated service entrance until it was opened by the building's security staff. Once the gate was opened, and after proceeding through the gate, he could not travel directly upstairs to whichever floor he was assigned to paint. He was required to line up with other construction personnel and use the crowded, elevated loading dock to gain access into the building at the start of each workday and throughout the day whenever he needed to retrieve supplies. Plaintiff had no choice but to adhere to the owner's work site policy, and he was not provided with a safer or different means of gaining access to any other part of the building, including the area that MetLife was renovating in accordance to the terms of its lease with the owner. Since plaintiff's painting assignment related to a construction/renovation project within the building plaintiff was unquestionably engaged in an enumerated activity within the meaning of Labor Law § 240 (1).

Defendant contends, and the dissent agrees, that plaintiff was not engaged in an activity enumerated by the statute because he was not physically on the "construction site," meaning any of the floors upstairs that he had to paint and, therefore, had not yet begun to work. The dissent nonetheless acknowledges that accidents occurring "on the job site" come within the protections of Labor Law § 240 (1), even if they occur at a time when the plaintiff is not, or no longer, directly involved in the enumerated work (*Reinhart v Long Is. Light. Co.*, 91 AD2d 571 [1st Dept 1982], *appeal dismissed* 58 NY2d 1113 [1983]). This distinction, based upon rigid definitions of what it means to be "on the job" or "on a job site" ignores the reality of what construction workers employed on projects in high rise buildings face where, as here, a renovation project within a building (i.e. a vertical "job site"), may very well extend over several, possibly noncontiguous floors.

Labor Law § 240 (1) should be "construed with a commonsense approach to the realities of the workplace at issue" (*Salazar v Novalex Contr. Corp.*, 18 NY3d 134, 140 [2011]). The loading dock and service entrance is within the multi-storied high rise building owned by NY-1095, in which the MetLife project took place in accordance with the lease, subject to the owner's rules and regulations. The building as a whole, and in particular those parts, which must be accessed by a worker to do his or her job, cannot be discounted as a job site simply because it is multi-storied and the dock is not in the immediate vicinity of the floor(s) above that plaintiff was assigned to paint.

The fact that plaintiff was in the process of entering the building, but had not yet physically begun painting is not a basis to deny summary judgment. We have held, for instance, that a worker who is injured on a staircase that did not have any guardrails is entitled to the protections of the scaffold law, although his injury occurred while leaving the building and the alleged condition was not directly related to his assignment (*see Alarcon v UCAN White Plains Hous. Dev. Fund Corp.*, 100 AD3d 431, 432 [1st Dept 2012]). We have also held that a worker injured when he fell into an excavated hole at a work site is entitled to the protections of Labor Law § 240 (1) although the worker had arrived early for work that day and was not yet performing his tasks (*Amante v Pavarini McGovern, Inc.*, 127 AD3d 516 [1st Dept 2015]).

In distinguishing these cases the dissent seeks to do so on their facts, pointing out that the accidents occurred on the job or construction site. Labor Law § 240 (1), however, protects workers engaged in enumerated work activities. The statute does not use or define the term "construction site" or otherwise expressly limit its protections in that way. The salutary

purpose of Labor Law § 240 (1) is to protect workers from elevated risks which may manifest in many forms, and as succinctly stated by the Court of Appeals: "Our jurisprudence defining the category of injuries that warrant the special protection of Labor Law § 240 (1) has evolved over the last two decades, centering around a core premise: that a defendant's failure to provide workers with adequate protection from reasonably preventable, gravity-related accidents will result in liability" (*Wilinski v 334 E. 92nd Hous. Dev. Fund Corp.*, 18 NY3d 1, 7 [2011]).

Rather than isolating the moment of a plaintiff's injury, the general context of the work is what should be taken into account (*see Prats v Port Auth. of N.Y. & N.J.*, 100 NY2d 878, 882 [2003]). Clearly, at the time of the accident, plaintiff was entering the building and reporting to the construction site through the only means of access the owner made available to him and all other construction workers. Arguments that plaintiff's injury did not occur at a "construction site," under the circumstance of this case, places an unintended limitation on Labor Law § 240 (1).

While at the precise moment of plaintiff's injury he was awaiting clearance to enter the building and he slipped or fell off a permanent structure, there is no merit to NY-1095's further contention that plaintiff was not actually engaged in work involving a gravity-related risk (*see O'Connor v Lincoln Metrocenter Partners*, 266 AD2d 60, 61 [1st Dept 1999]). We have held that injuries sustained while a worker was on site, although entering or exiting the site, or on a break, come within the protections of Labor Law § 240 (1) (*Amante* at 516; *Morales v Spring Scaffolding, Inc.*, 24 AD3d 42, 44 [1st Dept 2005]; *Campisi v Epos Contr. Corp.*, 299 AD2d 4 [1st Dept 2002]). It is, therefore, of no moment the elevated loading dock is a permanent fixture that existed before the project began, not an open excavation pit as in *Amante*.

Although the loading dock was several feet off the floor, it had no railing, chain, demarcation or other protective safety device to prevent someone on the crowded platform from falling off its edge and the only argument summoned by NY-1095 is that it had no obligation under OSHA regulations to provide any kind of perimeter protection. Whether the dock was elevated three or four feet off the ground, plaintiff's fall therefrom cannot be described as a fall from a de minimis height. Furthermore, owner's asserted compliance with OSHA requirements applicable to loading docks does not defeat plaintiff's prima facie showing that he was injured when he fell from an

elevated dock used by him to gain access to the work site and floors above (*see e.g. Dalaba v City of Schenectady*, 61 AD3d 1151, 1152 [3d Dept 2009]; *Cruz v Cablevision Sys. Corp.*, 120 AD3d 744, 746 [3d Dept 2014]). This was plaintiff's sole means of accessing his assigned floor once he entered the work site (*see Oprea v New York City Hous. Auth.*, 226 AD2d 310, 311 [1st Dept 1996]), and he could not perform his work as a painter until he complied with these mandatory requirements (*see e.g. Amante* at 516; *Campisi* at 6-7). Not only was plaintiff required to enter via the loading dock each day and throughout the day, he did not countermand any order or building policy that he use some other means by which to enter the building (*see Amante* at 516). Moreover, any argument that plaintiff himself was to blame for his fall because he should have been more careful, or was rushing, touches on the issue of comparative negligence, which is not a defense to a Labor Law § 240 (1) claims (*Somereve v Plaza Constr. Corp.*, 136 AD3d 537, 539 [1st Dept 2016]). Here, under the lease, NY-1095 had the right and ability to provide safer access to the construction workers using the loading dock. Plaintiff's fall was a direct consequence of the owner's failure to provide adequate protection against the risk of such fall.

Summary judgment dismissing the Labor Law § 200 and common-law negligence claims was also properly denied. NY-1095 did not meet its burden of showing that the loading dock complied with all applicable codes, and was not inherently dangerous, because the affidavit of its architect was unsigned and unsworn. Concur—Mazzarelli, Manzanet-Daniels and Gische, JJ.

Tom, J.P., dissents in part in a memorandum as follows: While I agree with the majority that Supreme Court correctly denied that branch of defendant NY-1095 Avenue of the Americas, LLC's (NY-1095) motion for summary judgment seeking dismissal of the Labor Law § 200 and common-law negligence claims, I would find that the court erred in denying dismissal of the Labor Law § 240 (1) claim. Accordingly, I respectfully dissent.

In October 2008, plaintiff, who was employed as a painter by nonparty Cosmopolitan Decorating Co., Inc. (Cosmopolitan), was assigned to do painting work on certain floors at a building located at 1095 Avenue of Americas, a 42-story commercial office building with many different tenants, owned by defendant NY-1095. NY-1095 leased floors 13-20 and 40-41 to nonparty Metropolitan Life Insurance Company (MetLife), which was doing renovation work on the leased floors. MetLife

hired defendant Structure Tone as general contractor to perform renovations, which in turn hired Cosmopolitan to perform painting in MetLife's leased space.

In order to access the construction project on floors 13-20 and 40-41, plaintiff first had to enter the building through a loading dock entrance. Paul Gordon, then general manager of the building, testified that, in October 2008, workers used the building's service entrance through a loading dock located on 41st Street, signed in with security before gaining access to the building, and would then take the freight elevator to the floors where the renovation work was being performed. Gordon stated that a concrete ramp to the right of the loading dock led to the landing of the loading dock. The ramp had railings, but the loading dock did not because "[i]t would stop a truck from being able to make a delivery on that dock."

Plaintiff testified that, each morning at approximately 6:30 a.m., he and other contractors reported to the loading dock of the building, to wait for the door to open so they could sign in at a security desk. After signing in, he would take a freight elevator to the floor where he was painting, and change into his work clothes. Plaintiff testified that he worked at the site for more than a month before his accident. He always signed in at the loading dock once a day, sometimes more often if "we had to go down to receive a delivery for paint."

According to Gary Trobe, who measured the loading dock on behalf of NY-1095, the dock was just under four feet high. Plaintiff claimed the loading dock was five feet high.

Plaintiff testified that on the day of the accident he was standing on the loading dock, looking at a door, waiting for his turn to sign in. One person was ahead of him, and more than 10 were behind him in line. James Joyce, of Structure Tone, also stated that there was a large group of people waiting to sign in. According to plaintiff, as he was about to sign in, someone with identification behind him said: "[E]xcuse me. I need to go through." Plaintiff, who did not recall how close he was to the edge of the dock, took "a half step" back and fell off the loading dock. He stated that he did not trip on anything, and the accident did not involve any debris or slipping.

Labor Law § 240 (1) protects workers engaged in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure" (*see Martinez v City of New York*, 93 NY2d 322, 326 [1999]; *see also Soto v J. Crew Inc.*, 21 NY3d 562, 566 [2013]). In addition, to recover, the plaintiff must have suffered an injury as "the direct consequence of a failure to provide adequate protection against a risk arising from a

physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

The majority, in invoking Labor Law § 240 (1) in this case, has expanded its application to include an injured worker who was not at the work site and not engaged in any enumerated activity under the statute at the time of his injuries, and a fall from a height which the Court of Appeals has deemed not to constitute a significant elevation differential to warrant application of section 240 (1). This is a substantial departure from the legislature's clear intent in promulgating section 240 (1) and the case precedents concerning the statute issued by the Court of Appeals.

While section 240 is to be construed liberally to accomplish its purpose (*see Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]), "the statutory language must not be strained in order to encompass what the Legislature did not intend to include" (*Martinez v City of New York*, 252 AD2d 545, 546 [2d Dept 1998], *affd* 93 NY2d 322 [1999], quoting *Karaktin v Gordon Hillside Corp.*, 143 AD2d 637, 638 [2d Dept 1988]). Further, "there is a bright line separating . . . enumerated and nonenumerated work" (*Beehner v Eckerd Corp.*, 3 NY3d 751, 752 [2004] [holding that injuries occurring before or after an enumerated activity are not within the purview of section 240 (1)]; *see also Simon v Granite Bldg. 2, LLC*, 114 AD3d 749, 753 [2d Dept 2014] [holding section 240 inapplicable because "the accident occurred before the plaintiff and his decedent had begun any work that conceivably could have been covered under these sections of the Labor Law"]).

In this case, since plaintiff was not engaged in an activity enumerated by the statute, had not yet begun his work and was not physically on the construction site, and did not face a significant elevation differential, his cause of action based on Labor Law § 240 should be dismissed.

To reiterate, in order to determine whether plaintiff should be afforded the protections of Labor Law § 240 (1), we look at (1) whether he was engaged in an enumerated activity, (2) whether he was on the construction site, and (3) whether he faced a significant gravity related risk. Here, none of these factors are present.

Initially, the majority's statement that because "plaintiff's painting assignment related to a construction/renovation project within the building plaintiff was unquestionably engaged in an enumerated activity" is unsupported by the facts of this case, and contrary to case precedent. In an effort to support its ultimate conclusion, the majority erroneously reasons that

because plaintiff was required to use the loading dock entrance in order to enter the building and eventually reach the floor on which he was working, he was somehow engaged in an enumerated activity. However, in no reading of the section could a worker merely waiting to sign into a building be found to be engaged in an enumerated activity. Indeed, waiting in line to sign in and enter a building cannot possibly qualify as engaged in the "erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure." Simply, plaintiff was not even working at the time of his fall and thus cannot possibly invoke the application of section 240 (1).

It should be noted that not all of the building was under renovation. It was only the floors leased by MetLife which were being renovated. The other floors in this 42-story office building were occupied by other tenants who were operating their respective businesses. It is quite a stretch for the majority to conclude that the building was a work site. In fact, the work site was only on floors 13-20 and 40-41 where construction work was being performed in the building. Stated differently, the construction site is the location where the work enumerated in section 240 (1) is taking place. Therefore, because no work of any kind related to the construction work on the upper floors was taking place at the loading dock, the loading dock entrance cannot be considered a part of the construction site.

The majority argues that finding the loading dock not to be part of the construction site "ignores the reality of what construction workers employed on projects in high rise buildings face." In this regard, the majority stresses repeatedly that plaintiff was required to use the loading dock entrance to reach the floor he would be painting. However, in order to extend the protections of the Labor Law to the loading dock, we must consider the context of the work and the accident. Here, the loading dock was not where the renovation of MetLife's space was taking place, and plaintiff was not carrying out a task that was connected to any enumerated activity.

The majority also posits that because section 240 (1) does not define "construction site" we can extend the work site in this case to the entrance of a building where renovation work was being performed on certain floors contained therein. However, limiting the section's coverage to the actual location where the enumerated activities are taking place is a commonsense, reasonable interpretation of the statute employed by the courts in these cases.

Nor was plaintiff facing a risk arising from a physically significant elevation differential. Critically, plaintiff was injured

before he began any covered activity as he stood on a large and stable four-foot high loading dock waiting to sign in and enter the building. While the majority deems the height of the dock not to be de minimis, they fail to address or even acknowledge the Court of Appeals' position on this issue (*see Toefer v Long Is. R.R.*, 4 NY3d 399, 408 [2005]).

The majority ignores the most fundamental principle applicable to these cases which is "the fact that a worker falls at a construction site, in itself, does not establish a violation of Labor Law § 240 (1)" (*O'Brien v Port Auth. of N.Y. & N.J.*, 29 NY3d 27, 33 [2017], citing *Berg v Albany Ladder Co., Inc.*, 10 NY3d 902, 904 [2008]; *Toefer* at 407; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 288 [2003]; *Narducci v Manhasset Bay Assoc.*, 96 NY2d 259, 267 [2001]). Indeed, while plaintiff may have valid Labor Law § 200 and common-law negligence claims, the fact that he fell does not equate to a sustainable section 240 claim. Once again, the loading dock here was not a part of the construction site.

Further, as the Court of Appeals explained in *Rocovich* (78 NY2d at 513), a violation of the statute cannot "establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury" (internal quotation marks omitted).

The "special hazards" referred to in *Rocovich*, do not "encompass *any and all* perils that may be connected in some tangential way with the effects of gravity" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993]). Rather, they are: "limited to such specific gravity-related accidents as falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured . . . In other words, Labor Law § 240 (1) was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker *from harm directly flowing from the application of the force of gravity to an object or person*" (*id.*).

Here, as the majority notes, the section "protects workers engaged in enumerated work activities" and since plaintiff was not so engaged at the time of the accident and was not subjected to a significant gravity-related risk, there is no basis to extend the protections of the statute in this case. Further, what type of protective device prescribed under section 240 (1) can be provided to a worker who was injured while waiting on a loading dock to sign in before entering a building where he would then take a freight elevator to the floor where he was assigned to do painting work? Plaintiff testified that neither a

safety belt nor harness would have prevented the accident. Clearly, this is not the type of accident section 240 (1) was intended to prevent.

The cases upon which the majority and plaintiff rely are inapposite. Indeed, the circumstances of those cases allowed for a reasonable extension and liberal construction of section 240 to accomplish its purpose. Specifically, those cases, unlike this one, involved workers exposed to special hazards related to work site elevation differentials, such as collapsing scaffolds or other failed safety devices, or unmarked pits or gaps on the work site. Here, however, extending section 240 to protect plaintiff requires a strained interpretation of the statutory language far beyond what the legislature intended, and in conflict with controlling Court of Appeals precedent.

The first category of these cases involve accidents where the plaintiffs were not engaged in an enumerated activity at the moment when the accident occurred, but took place at the work site. In *Morales v Spring Scaffolding, Inc.* (24 AD3d 42 [1st Dept 2005]), the plaintiff was situated on a sidewalk bridge used as a staging area and as an entryway onto the scaffolding. The accident occurred when, during his lunch break, the plaintiff fell from the bridge as it collapsed. In *Reinhart v Long Is. Light. Co.* (91 AD2d 571 [1st Dept 1982], *appeal dismissed* 58 NY2d 1113 [1983]), the scaffold collapsed not when the plaintiffs were engaged in plumbing, but when they were discussing payroll and time sheet problems. However, a critical distinction is that those accidents occurred on the job site and took place on scaffolds or bridges, devices constructed to give workers proper protection, but which were defective.

Here, the loading dock was not where the renovation of MetLife's space was taking place, and plaintiff was not carrying out a task that was connected to any enumerated activity (*cf. Rivera v Squibb Corp.*, 184 AD2d 239, 240 [1st Dept 1992] [the plaintiff injured on a loading dock area while engaged in removing construction debris, in connection with demolition work performed on the 25th through 27th floors]).

Further, unlike the scaffold or bridge in the foregoing cases, the loading dock here was a permanent structure and appurtenance of the building, and was not temporarily constructed to give plaintiff proper protection during his work. Nor was it being used as a safety device to gain access to an elevated work site. *Ryan v Morse Diesel* (98 AD2d 615 [1st Dept 1983]) is instructive. In *Ryan*, the plaintiff was injured when, "carrying a bucket of bolts, he stubbed his toe and fell while walking down a permanently installed but unfinished

interior stairway of the hotel under construction" (*id.* at 615). We found Labor Law § 240 (1) inapplicable, stating: "under no construction [of the statute] can this permanently installed stairway, used by the plaintiff as a place of passage, be deemed to be a scaffold, hoist, stay, ladder, sling, hanger, block, pulley, brace, iron or rope. The stairway was not a tool used in the performance of the plaintiff's work" (*id.* at 616).

In *Brennan v RCP Assoc.* (257 AD2d 389, 391 [1st Dept 1999], *lv dismissed* 93 NY2d 889 [1999]) we further explained that "the determinative criterion in *Ryan* is not the permanence of the structure but its character as a normal appurtenance of the building rather than a device designed to protect the worker from elevation-related hazards." Thus, in *Brennan*, we found section 240 applicable to a platform "installed precisely to afford access to the building's cooling towers so as to permit normal maintenance and repairs to be carried out" (*id.* at 391; *see also Cassidy v Highrise Hoisting & Scaffolding, Inc.*, 89 AD3d 510 [1st Dept 2011] [finding section 240 applicable to defective temporary loading dock installed to protect workers]). By contrast, the loading dock in this case was a normal appurtenance of the building and not a device designed to protect plaintiff from elevation-related hazards. Yet, the majority would avoid this key distinction between permanent fixtures and devices designed to protect workers. In so doing, the majority misplaces reliance on cases, discussed below, where upon entering the site the worker is subjected to a significant gravity related hazard (*see e.g. Amante v Pavarini McGovern, Inc.*, 127 AD3d 516 [1st Dept 2015]).

The second category of cases involve plaintiffs injured while entering and exiting the construction site. In *Alarcon v UCAN White Plains Hous. Dev. Fund Corp.* (100 AD3d 431 [1st Dept 2012]), the plaintiff, while in the process of exiting the site, fell 3½ stories from a scaffold and connected makeshift staircase which lacked guardrails. In *Amante* (127 AD3d at 516), the plaintiff fell into a 12 to 15 foot deep excavation pit after entering through an open gate—the only entrance provided—and crossing onto the job site. In *Campisi v Epos Contr. Corp.* (299 AD2d 4 [1st Dept 2002]), the plaintiff entered the threshold of the building entrance, fell through a gap between two flooring joists, and ended up dangling between the first floor and the basement. Notably, all of these accidents occurred on the job site and involved either a device constructed to provide protection which was defective or an unmarked pit/gap which created an exposure to an elevation-related risk. Such circumstances do not exist here. In relying on these cases, the majority ap-

pears to ignore the significant facts of those cases that the accident occurred at the work site and especially the significant gravity-related risks to the workers. Instead, they focus only on the fact that the workers were not performing their tasks at the time of the accident.

Controlling precedent from the Court of Appeals dictates that when a worker is on a "large and stable surface only four feet from the ground[,] [t]hat is not a situation that calls for the use of a device like those listed in section 240 (1) to prevent a worker from falling" (*Toefer v Long Is. R.R.*, 4 NY3d at 408). As set forth in *Toefer*: "A four-to-five-foot descent from a flatbed trailer *or similar surface* does not present the sort of elevation-related risk that triggers Labor Law § 240 (1)'s coverage. Safety devices of the kind listed in the statute are normally associated with more dangerous activity . . . Obviously, the distance between the work platform and the ground is relevant; no one would expect a worker to come down without a ladder or other safety device from a work platform that was 10 feet high. But the lesser distance Marvin had to travel, considering the nature of the platform he was departing from, was not enough to make Labor Law § 240 (1) applicable" (*id.* at 408-409 [emphasis added]).

Therefore, since the loading dock from which plaintiff fell was a stable surface no more than four feet high, and there are no other circumstances in this case which created a significant gravity related risk, Labor Law § 240 (1) is inapplicable. The majority's statement that plaintiff's fall from a loading dock three or four feet off the ground "cannot be described as a fall from a de minimus height" is in direct conflict with the Court of Appeals in *Toefer*, which this Court is bound to follow. As a matter of law, plaintiff's fall from the four foot high permanent loading dock under similar circumstances as in *Toefer* was not "enough to make Labor Law § 240 (1) applicable" (4 NY3d at 409). The majority also relies on inapposite cases involving falls of 30 and 40 feet (*see Cruz v Cablevision Sys. Corp.*, 120 AD3d 744 [2d Dept 2014]; *Dalaba v City of Schenectady*, 61 AD3d 1151 [3d Dept 2009]), which are clearly distinguishable from the facts of this case which involves a four foot drop.

Moreover, the majority's discussion of the lack of railings, chains, demarcations or other protective devices on the loading dock and the fact that plaintiff did not countermand any orders when he entered via the loading dock is inconsequential given the foregoing binding precedent. These points may be relevant to plaintiff's Labor Law § 200 and common-law negligence claims.

Accordingly, I would modify the order on appeal to the extent of granting that branch of NY-1095's motion for summary judgment dismissing plaintiff's Labor Law § 240 (1) claim.

Richter, J., dissents in part in a memorandum as follows: I agree with the majority with respect to the Labor Law § 200 and common-law negligence claims. I agree with the dissent that the Labor Law § 240 (1) claim should be dismissed. I join the dissent's analysis to the extent it concludes that, in this particular case, the area where the accident occurred was not part of the work site.