[724 NYS2d 155]

Khamrajh Hargobin et al., Respondents-Appellants, v K.A.F.C.I. Corp. et al., Respondents, and AARK Construction of N. Y. Inc. et al., Appellants-Respondents.

First Department, May 3, 2001

## APPEARANCES OF COUNSEL

*Norman E. Frowley* of counsel (*Zalman & Schnurman,* attorneys), for respondents-appellants.

*Lisa M. Comeau* of counsel (*Law Offices of Patrick Colligan* and *Carol R. Finocchio,* attorneys), for respondents.

*Haydn J. Brill* of counsel (*Jeffrey T. Miller* on the brief; *Smith Mazure Director Wilkins Young Yagerman & Tarallo, P. C.,* attorneys), for AARK Construction of N. Y. Inc., appellant-respondent.

*Christopher J. Crawford* of counsel (*Stephen M. Cohen* on the brief; *Brody, Fabiani & Cohen,* attorneys), for Barney Skanska Construction Company and another, appellants-respondents.

*Lewis R. Silverman* of counsel (*Heather G. Golin* on the brief; *Renzulli & Rutherford, L. L. P.,* attorneys), for American Airlines, Inc. and another, appellants-respondents.

## OPINION OF THE COURT

WALLACH, J.

The Scaffold Act (Labor Law § 240 [1]), which is designed to enhance the safety of laborers whose work on construction sites calls for the use of such apparatus as "scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, [or] ropes," was first introduced in this State more than a century ago as a criminal sanction against the negligent furnishing of insecure safety devices (L 1885, ch 314). The penal aspect of the statute was dropped before the turn of the century, in favor of imposing absolute civil liability (L 1897, ch 415, § 18) that has continued with little change to this day.

Although the statute seems deceptively simple on its face, few legislative enactments have taxed the courts more, probably because of the infinite factual variations that are continually presented to them. Well-intentioned efforts by courts to fashion overarching rules have often failed, and calls for a legislative overhaul of the statute are becoming more strident (*see*, Riccardi, *Scaffold Law Is Falling Out of Favor With Some*, NYLJ, Mar. 15, 2001, at 1, col 3). In the meantime, we face the

challenge of threading our way through the luxuriant forest of existing case law.

The case before us presents just such a challenge. When American Airlines undertook the expansion and renovation of its terminal at Stewart Airport in Newburgh, in 1993, it hired AARK as general contractor, with Barney Skanska acting as construction consultant. AARK subcontracted the carpentry and exterior sheetrocking work to KAFCI/Terra Firma, which in turn contracted with Allied Building Supply, to provide materials for the job.

Plaintiff Khamrajh Hargobin, a crane operator employed by Allied, delivered materials to the job site in a boom truck on October 15, 1996. In his deposition he testified that upon arrival, he left the driver's seat, checked his inventory, and ascended a ladder some 13 feet to a platform where he could operate the boom controls in downloading the cargo on forklift pallets. From this seat, which was about 18 to 20 inches above the platform, Khamrajh caused the crane to lift the first stack of material and lower it to the worksite. When the load was about eight feet from the ground, the boom suddenly snapped and detached from the truck, causing the load to fall. The lurching motion of the boom pitched Khamrajh forward out of his seat (which was not equipped with a seat belt or harness) against the control levers, and he landed on the floor of the platform, between the seat and the controls. As he fell to the floor, his buttocks came in contact with the front of the seat. When he got up, Khamrajh immediately felt slight pain in his chest and lower back. Khamrajh hastened down the ladder and observed that three or four bolts had broken off the base of the boom.

An eyewitness, KAFCI's carpentry foreman, gave slightly contradictory testimony, in that the first load of cargo was observed being lowered without incident, but the boom "sat down" when the *second* load was within three feet of the ground. Instead of then using the ladder to dismount, Khamrajh was observed jumping from his seat to the surface of the cargo about two feet below, and then to the ground, to inspect the boom. Within 10 minutes, Khamrajh climbed back into the control seat and managed to maneuver the boom "back in tight" to the truck. When construction workers from the site gathered to find out what had happened and whether anyone was injured, Khamrajh described the incident and complained of pain in his lower back, which information was included in a workers' compensation report the next day.

This lawsuit, seeking recovery for Khamrajh's back injuries, alleged a violation of Labor Law § 240, *inter alia*. Joinder of issue was accompanied by a flurry of cross claims among the various defendants for indemnification. Following discovery, plaintiffs moved in 1999 for partial summary judgment, and the various defendants cross-moved for summary judgment.

The IAS court denied plaintiffs' motion, which was limited to Khamrajh's claim under section 240 (1), and granted the cross motions for dismissal of all claims and cross claims as against KAFCI and Terra Firma. The cross motions of the other defendants were granted to the extent of dismissing the common-law liability claims brought under Labor Law § 200. Claims alleging liability under Labor Law § 241 (6) were also dismissed for failure to identify an Industrial Code violation. The motion court left for the factfinder the resolution of the cross claims among the remaining defendants, and a determination of proximate causation related to the section 240 (1) claim. We disagree.

Construction workers who perform their duties above their normal reach from the ground are often dependent upon manmade devices to elevate them or their materials to the work area. A worker in such an elevated environment should be able to rely on the integrity of these devices to protect him from elevation-related hazards on the job, such as "falling from a height or being struck by a falling object that was improperly hoisted or inadequately secured" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501). The Legislature has determined, in its most recent amendment to the operational portion of the Scaffold Act (L 1969, ch 1108, § 1), that the property owner or general contractor is in the unique position of being able to provide such safeguards (*Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 520; *see*, 1969 NY Legis Ann, at 407-408).

In order to invoke the absolute liability of this statute, a plaintiff must prove that the violation proximately caused his injury (*see*, *Duda v Rouse Constr. Corp.*, 32 NY2d 405, 410), and that the claim is specifically related to the protection contemplated by the Legislature. As Chief Judge Cardozo long ago cautioned, "The violation of a statute calling for a prescribed safeguard in the construction of a building does not establish liability if the statute is intended to protect against a particular hazard, and a hazard of a different kind is the occasion of the injury" (*De Haen v Rockwood Sprinkler Co.*, 258 NY 350, 353).

The Scaffold Act enumerates devices, rather than hazards or circumstances. In construing the statute, courts are required to scrutinize two interrelated issues: the work that is being performed by the laborer, and the nature of the protective device and the manner in which it is being utilized.

## The Work in Which Plaintiff Was Engaged

A once pervasive standard thought to be the universal solvent of these cases was whether the hazard was "gravity-related," a concept introduced by the Court of Appeals in *Ross v Curtis-Palmer Hydro-Elec. Co. (supra)*. This solution has proven illusory because virtually everything in the physical world that is above ground and heavier than air is affected by gravity. The Court of Appeals has now acknowledged that the protections of the statute are not implicated simply because injury is caused by the effect of gravity (*Melo v Consolidated Edison Co.*, 92 NY2d 909, 911). The more accurate test is whether the protective device being utilized is intended to facilitate access to a different elevation level for the worker or his materials (*Melber v 6333 Main St.*, 91 NY2d 759, 762; *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514).

Recent case law has extended the applicability of the Scaffold Act to accidents occurring at locations far removed from the precise location of the building or structure where the construction, alteration or demolition is actually taking place. Even a worker falling from a defective ladder while cutting down a tree located on property intended for construction is now entitled to absolute liability protection (*Lombardi v Stout*, 80 NY2d 290).

But even the most liberally expansive reading to which this statute is entitled (*see, Martinez v City of New York*, 93 NY2d 322, 326, quoting *Quigley v Thatcher*, 207 NY 66, 68) has its limits. The most recent test, with regard to alteration work, requires that the worker activity invoking statutory coverage directly contribute toward "a *significant* physical change to the configuration or composition of the building or structure" (*Joblon v Solow*, 91 NY2d 457, 465 [emphasis in original]). Khamrajh's activity here fails to satisfy this test.

## The Protective Device at Issue

A crane—the elevation assist being used in the case at bar—is not a device enumerated as such in the statute, and thus the circumstances will determine whether its use triggers the absolute liability provisions of this law. For example, a crane or derrick placed on the top of a building for the purpose

of hoisting materials, which causes injury because it is not properly ballasted or anchored to the roof, can invoke the coverage of the statute (*cf., Lockhart v Hoffman,* 197 NY 331). Likewise, a crane that tips over while lifting its cargo directly to the roof of the building where the construction work is being performed has met the statutory definition of a hoist (*Cosban v New York City Tr. Auth.,* 227 AD2d 160). On the other hand, where a crane is being utilized at a worksite for something other than an elevation assist directly related to the object of the construction, improvement or demolition, it is not a safety device covered by the statute. For example, the operation of a crane to clear tree trunks from property intended for construction does not constitute utilizing an elevation device that would invoke the absolute liability provisions of this statute (*see, Nagel v Metzger,* 103 AD2d 1; *but cf., Lombardi v Stout, supra*).

*Region v Woodward Constr.* (140 AD2d 758, *lv dismissed* 72 NY2d 952) involved an ironworker who was helping to move stacks of steel building materials, called purlins. He was being assisted in this task by a mobile crane. The worker on the ground in front of the crane tried to attach a hook suspended from a cable attached to the boom of the crane to a stack of purlins, so the crane operator could lift the stack and move it to another location. The crane cable came in contact with electric lines, and the worker was electrocuted. The Third Department held that the crane was being used as a hoist, so the absolute liability statute applied to this fatal accident.

Five years later, the same court heard *Smith v New York State Elec. & Gas Corp.* (189 AD2d 19), where the plaintiff was one of several ironworkers dismantling a coal conveyor system housed in an underground concrete vault. The dismantled pieces were being hoisted through a small opening in the ceiling to the surface by means of a crane. The workers in the vault had to drag a 200-pound tension ball and hook, hanging from the crane, and attach them to the equipment to be removed. Once the hook was fastened, the crane would then reel in the line, dragging the load horizontally across the floor of the vault until it was positioned beneath the opening, at which point the crane would hoist the load up to the ground level. At one point, a dismantled piece of equipment that was being dragged got snagged on some debris, and when the line suddenly detached from the equipment, the tension ball was propelled across the floor, hitting and injuring the plaintiff. Supreme Court dismissed the claim under section 240 (1). The Third Department reversed, holding that this work exposed

the plaintiff and his co-workers to risks related to elevation differentials and the effects of gravity, thus mandating the safety devices contemplated in section 240 (1). The majority of the court held that simply because the crane's hoisting mechanism was being used to apply a horizontal force in moving equipment at the time of the injury, this should not relieve the defendants of the statutory "proper protection" requirement of the statute. Justice Harvey dissented, noting that the crane, which is normally a safety device utilized to elevate objects, was not being used for that purpose at the time of the accident. The dissenter took issue with what he called an irrational view that no matter how a safety device is being used, the absolute liability statute will apply as long as the device is *usually related to elevation risk activities*. "The statute was designed to protect those involved in elevation-related risks. Application depends upon the activity being performed. An activity does not become an elevation-related risk simply because the equipment being used is eventually intended to be used to raise materials from one level to another." (*Id.*, at 24.) The Court of Appeals, apparently adopting the logic of the dissent, reversed (82 NY2d 781), holding that the plaintiff's injury did not result from an elevation-related hazard.

At the time of the boom's failure in the case before us, Khamrajh Hargobin was not engaged in activity that came within the ambit of section 240 (1). The fact that the cab was elevated two or three feet above the level to which he alighted did not render this apparatus a Scaffold Act device (*see, Bond v York Hunter Constr.*, 95 NY2d 883). Furthermore, the fall from his seat to the floor of the cab—while possibly preventable by use of a harness or seat belt—was no more of an elevation-related occurrence than a fall from the seat to the floor of an automobile after a head-on collision, and thus does not invoke the special protection of the statute.

Litigation under Labor Law § 240 (1) has expanded to the point where the establishment of clear parameters for devices not specifically enumerated in the statute now seems futile without full-scale legislative review. But at least in the narrow circumstances before us, involving the use of a crane at a construction site, we hold that the machinery was not being utilized to bring about significant structural change on the site, and Khamrajh was not injured directly as a result of activity for which the Scaffold Act would have provided protection. Accordingly, summary judgment should have been granted to all defendants on the cause of action under Labor Law § 240

(1). Our decision obviates any need to consider the cross claims for indemnification, and the appeals stemming therefrom.

The order of Supreme Court, Bronx County (Bertram Katz, J.), entered on or about January 11, 2000, which denied plaintiffs' motion for partial summary judgment on the Labor Law § 240 (1) claim, granted the cross motion of defendants KAFCI and Terra Firma for summary judgment, and further dismissed all of plaintiffs' claims under sections 200 and 241 (6), but denied similar motions by the remaining defendants with respect to claims under section 240 (1), should be modified, on the law, to dismiss all claims under section 240 (1), and otherwise affirmed, without costs. Defendant AARK's appeal from an order, same court and Justice, entered on or about March 20, 2000, denying reargument, should be dismissed, without costs, inasmuch as that order is not appealable.

NARDELLI, J. P., WILLIAMS, TOM and FRIEDMAN, JJ., concur.

Order, Supreme Court, Bronx County, entered on or about January 11, 2000, modified, on the law, to dismiss all of plaintiffs' claims under Labor Law § 240 (1), and otherwise affirmed, without costs. Appeal from order, same court, entered on or about March 20, 2000, dismissed, without costs, as taken from a nonappealable order.