(February 18, 2016)

■ Michael Somereve et al., Respondents, v Plaza Construction Corp., Appellant. [26 NYS3d 21]—

Order, Supreme Court, New York County (Anil C. Singh, J.), entered January 16, 2014, which granted plaintiffs' motion for partial summary judgment on the Labor Law § 240 (1) cause of action, affirmed, without costs.

The injured plaintiff testified that on the day of the alleged accident, he was operating a prime mover, which resembles a mini-forklift, to hoist a load of bricks onto a scaffold 5½ to 6 feet high. Plaintiff testified that the forks had to be about four to six inches away from the edge of the scaffold as he raised them to place the load on the scaffold; if the forks were too close, plaintiff would not be able to lift the load because the forks would hit the scaffold. Once the forks had cleared the top of the planks, plaintiff would drive forward and rest the load on the scaffold.

On the day of the alleged accident, two of plaintiff's colleagues were standing on top of the scaffold, with one of them watching to assure that the forks were properly placed in relation to the height of the scaffold. The colleague verbally or through hand signals informed plaintiff that the forks were clear of the scaffold; thus, plaintiff understood that he would

be able to safely raise the load and deposit the bricks on the scaffold. However, when the load was approximately five feet off the ground, the prime mover flipped forward and plaintiff was ejected off the back of the machine and onto the concrete floor.

Defendant's project superintendent, Charles J. Krammer, whom defendant produced for deposition, did not actually see the alleged accident occur, but rather, arrived at the scene soon afterward. According to Krammer's testimony, plaintiff stated that the prime mover threw him and that he "flew over the handlebars" of the machine. Further, Krammer testified that although he saw two laborers standing at the site of plaintiff's alleged accident, neither one of them informed Krammer that they had witnessed the events. Nor did anyone else at the site so inform Krammer.

Defendant subpoenaed two other people who had been at the site—Luis Caratini, a laborer who plaintiff said had witnessed the alleged accident, and Michael Catalano, a supervisor—intending to take their depositions. But before those depositions could proceed, plaintiffs moved for partial summary judgement on the issue of liability on the Labor Law § 240 (1) claim.

We agree with the motion court that plaintiff is entitled to summary judgment on his Labor Law § 240 claim. Plaintiff was using the prime mover to hoist a load; if the prime mover pitched forward due to the force of gravity, it failed to offer adequate protection and Labor Law § 240 (1) applies (*see Potter v Jay E. Potter Lbr. Co., Inc.*, 71 AD3d 1565, 1566-1567 [4th Dept 2010]; *see also Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603-604 [2009]; *Penaranda v 4933 Realty, LLC*, 118 AD3d 596, 597 [1st Dept 2014]). Similarly, if the accident occurred because either the prime mover or scaffold could not support the weight of the brick load, the accident also resulted from the application of the force of gravity to the load during the hoisting operation, and Labor Law § 240 (1) applies (*see Runner*, 13 NY3d at 603-604; *Bilderback v Agway Petroleum Corp.*, 185 AD2d 372, 373 [3d Dept 1992], *lv dismissed* 80 NY2d 971 [1992]).

Furthermore, despite defendant's (and the dissent's) contention otherwise, no further discovery or depositions are necessary on the Labor Law § 240 (1) issue; on the contrary, under any version of the events surrounding the accident, plaintiff is entitled to summary judgment on that claim. Defendant advances two theories in opposition to plaintiff's summary judgment motion: first, that the prime mover, which plaintiff

himself loaded, may have been carrying too much weight; and second, that the bricks on the prime mover may have come into contact with the scaffold as plaintiff was raising the load, thus causing the prime mover to tip forward. But even were we to accept the arguments that defendant advances, our decision would be no different.

Even assuming for the sake of argument that the outstanding depositions shed light on either one of these theories, the testimony would at most touch on the issue of comparative negligence, which is not a defense to a Labor Law § 240 (1) claim (*see Zimmer v Chemung County Performing Arts*, 65 NY2d 513, 523 [1985]; *Stankey v Tishman Constr. Corp. of N.Y.*, 131 AD3d 430 [1st Dept 2015]). Accordingly, given plaintiff's account of the events surrounding the alleged accident, further testimony would not change the outcome of the decision on plaintiffs' motion.

At any rate, defendants have never made any showing that Caratini was available to testify; defendant apparently served the subpoena and the deposition was noticed for July 2013, but it never took place. Even if Caratini were available, defendant offered nothing more than speculation about what his testimony might prove. However, a mere hope that further discovery will provide evidence to defeat summary judgment is insufficient to defeat a summary judgment motion (*Flores v City of New York*, 66 AD3d 599, 600 [1st Dept 2009]). As for Catalano, he not only provided an affidavit supporting defendant, but also made clear in that affidavit that he did not witness the alleged accident, but arrived on the scene only afterward; thus, further testimony from him would shed no light on the matter.

The dissent also fails to properly characterize the nature of plaintiff's alleged accident. Plaintiff did not simply "f[a]ll from the platform of the prime mover situated eight inches off the floor," as the dissent states. Similarly, plaintiff was not simply "alighting" from the prime mover. The testimony in the record shows instead that the prime mover tipped forward, with a resulting "catapult-type effect" on plaintiff. The prime mover then ejected plaintiff upward, causing him to hit the ductwork or the ceiling before he was "slammed" onto the concrete floor of the site. Certainly, it is appropriate to characterize this sequence of events as a gravity-related accident (*see Potter*, 71 AD3d at 1566).

Likewise, despite our dissenting colleague's suggestion otherwise, there is no viable argument that plaintiff was the sole proximate cause of this accident. The record presents no evidence that plaintiff failed or refused to use an available

safety device or that he disregarded a supervisor's instructions regarding use of the prime mover, nor does the dissent point to any. Rather, the record establishes simply that the prime mover pitched forward when plaintiff raised the forks (*see Amante v Pavarini McGovern, Inc.*, 127 AD3d 516 [1st Dept 2015]; *Nacewicz v Roman Catholic Church of the Holy Cross*, 105 AD3d 402, 402-403 [1st Dept 2013]; *see also Vasquez-Roldan v Two Little Red Hens, Ltd.*, 129 AD3d 828, 830 [2d Dept 2015]).

What is more, "[t]he Labor Law does not require a plaintiff to have acted in a manner that is completely free from negligence" (*Kielar v Metropolitan Museum of Art*, 55 AD3d 456, 458 [1st Dept 2008] [internal quotation marks omitted]). On the contrary, that plaintiff may have negligently lowered the pallet, as the dissent posits, makes no possible difference to the outcome here, as "[n]egligence, if any, of the injured worker is of no consequence" (*Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 513 [1991]). Rather, the law is clear that "if a statutory violation is a proximate cause of an injury, the plaintiff cannot be solely to blame for it" (*Kielar*, 55 AD3d at 458 [internal quotation marks omitted]; *see Orellano v 29 E. 37th St. Realty Corp.*, 292 AD2d 289, 291 [1st Dept 2002]). Here, the failure to provide a proper hoisting device to protect plaintiff violated Labor Law § 240 (1). Concur—Sweeny, Moskowitz and Gische, JJ.

Tom, J.P., and Andrias, J., dissent in a memorandum by Tom, J.P., as follows: The majority awards summary judgment to plaintiff by employing the conclusory reasoning that because the accident involved the use of a safety device enumerated under Labor Law § 240 (1), and the worker was injured while operating the device, the worker is entitled to recover for his injuries. In this case, no defect in the machine he used to lift a pallet of bricks onto a scaffold is identified. Nor was the platform of the machine from which the worker fell a type of elevation risk requiring protection against the hazard represented by the force of gravity. More significantly, the evidence raises a factual issue as to whether plaintiff's injuries were caused solely by his own negligent operation of the machine. Finally, plaintiff could not give an explanation as to how the incident occurred and there are at least two identified witnesses to the occurrence who were subpoenaed but have not yet been deposed and are in a position to shed light on how it occurred. Thus, summary judgment was prematurely awarded.

According to plaintiff Michael Somereve, Louis Caratini, a laborer working on the fourth floor at a school construction

project was at the controls of a prime mover* loaded with about 1,500 pounds of bricks. After plaintiff observed that Caratini appeared to be highly anxious, plaintiff took over the operation of the machine. The prime mover was a piece of equipment owned by plaintiff's employer. After lowering the load to the floor, he first backed out the fork from the pallet on which the bricks, wrapped in plastic sheeting and further secured by plastic bands, had been previously deposited. He reinserted the tines to make sure they protruded through the pallet to the maximum extent and verified that the load was properly balanced. He then raised the load a few inches off the floor and approached a scaffold that was six feet in height. The next step would be to raise the pallet of bricks and place them on top of the scaffold. As plaintiff relates, he had to be some four to six inches away from the edge or front of the scaffold before lifting the bricks to the top of the scaffold. If he was too close to the scaffold, "[t]he forks would hit the scaffold." After the skid of bricks was raised past the height of the scaffold he would drive forward and rest the pallet on the scaffold where the bricks could be unwrapped and manually transferred by laborers to where masons would use them to face the exterior cinder block wall.

When one of two persons on the scaffold told him that he could begin to raise the fork, plaintiff began to raise the pallet of bricks. As it reached a height of about five feet, for reasons plaintiff alleged to be unable to explain, the load "flipped forward and [plaintiff] was ejected off the back of the machine." Plaintiff stated that Caratini witnessed the accident, but he did not know if the two laborers on the scaffold, one named Mike, saw what happened.

The majority opines that because the force of gravity operated on either the prime mover or the scaffold and plaintiff sustained injury, he is entitled to recover under Labor Law § 240 (1). However, the Court of Appeals has made clear that injury from a fall at a construction site does not automatically bring a worker within the ambit of the protection afforded by the statute. "Among other prerequisites, a worker must demonstrate the existence of an elevation-related hazard contemplated by the statute and a failure to provide the worker with an adequate safety device" (*Berg v Albany Ladder Co.,*

---

* A prime mover is similar to a forklift in both design and operation, the difference being that instead of sitting on a seat in the middle of the machine, the operator of the mover is able to stand on a platform at the back of the device or fold up the platform and walk behind it. The platform, which was being used in this instance, is elevated about eight inches above floor level.

*Inc.*, 10 NY3d 902, 904 [2008]), as well as a nexus between the violation and the resulting injury (*Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 [2003]). Here, plaintiff's mere statement that the mover "flipped forward," without more, is insufficient for the majority to grant summary judgment in light of evidence showing his injuries were proximately caused by his own negligent operation of the machine.

In contrast with the majority's conclusion that the prime mover simply "pitched forward" when plaintiff raised the fork, the evidence, ignored by the majority, supports finding that the prime mover was caused to come into contact with the scaffold by plaintiff while he was raising the pallet of bricks or while he was negligently lowering the pallet onto the scaffold when the fork of the mover had not yet cleared the top of the scaffold. Hence, the evidence raises a factual issue as to whether this incident was caused solely by plaintiff's negligent operation of the mover, thus precluding the grant of summary judgment to plaintiff on the Labor Law § 240 (1) claim. Supreme Court thus erred when it granted plaintiff partial summary judgment on his Labor Law § 240 (1) claim since a "reasonable jury could have concluded that plaintiff's actions were the sole proximate cause of his injuries, and consequently that liability under [section] 240 (1) did not attach" (*Weininger v Hagedorn & Co.*, 91 NY2d 958, 960 [1998]).

First, there is no proof offered by plaintiff that the device, the prime mover, provided was defective or that it proximately caused plaintiff's injuries. Rather, the evidence suggests that plaintiff's injuries were caused solely by his negligent operation of the prime mover. The incident caused extensive damage to the scaffold, but the prime mover was found not to be defective nor did it malfunction. In fact, the mover continued to be used after the accident without any operational problems or repairs whatsoever. Charles J. Krammer, the project superintendent for Plaza Construction Corp., the general contractor, who was at the site shortly after the accident, stated that the prime mover had no apparent physical damage and was immediately put back into service "because the equipment looked fine and he claimed to have fallen off of it." Michael Catalano, supervisor for Town Masonry, plaintiff's employer, also avers in his affidavit that he observed no damage to the prime mover after the incident and confirmed that it was placed back into operation without any problems.

Nor has the scaffold been shown to have been inadequate to afford the requisite statutory protection. It prevented two workers (who, Krammer testified, were supposed to be present on

the scaffold just in case an incident such as this occurred) from falling, and it prevented the bricks dropped onto it from causing injury to workers below. Thus, "there is no evidence that the scaffolding was defective or otherwise failed to perform its function of elevating the workers and their material," and plaintiff is not entitled to summary judgment on the issue of liability (*Beesimer v Albany Ave./Rte. 9 Realty*, 216 AD2d 853, 855 [3d Dept 1995]).

Krammer examined the site and observed that the pallet had been dropped onto the scaffold flooring, a platform made up of five 2 by 10 or 2 by 12 planks, with such force so as to dislodge the two planks closest to the outer wall of the scaffold, causing the front edge of the pallet to penetrate the platform and protrude a couple of feet beneath the planking. The support and cross-brace bars of the scaffold were bent from the impact. The fact that the front cross-brace bar of the scaffold was bent indicates something heavy (the prime mover) striking it directly with force. Based on plaintiff's testimony, the accident occurred when he raised the skid of bricks about five feet, from which it can be reasonably inferred that at the time of the impact the pallet of bricks had not cleared the top of the scaffold which was six feet in height and the pallet of bricks were dropped onto the scaffold flooring. Indeed, shortly after the incident, plaintiff informed Krammer that he believed that "the forks caught and it threw him." Krammer testified that from the damages he observed, "It looked like he was backing out, the forks caught and the load shifted and ejected him off the machine."

The majority suggests that the accident occurred, because "either the prime mover or scaffold could not support the weight of the brick load." There is no evidence presented to support this contention. Catalano testified, and it was undisputed, that the prime mover was well suited to lifting a 1,500-pound pallet of bricks and had been routinely lifting and placing this capacity of bricks on the scaffold for weeks before the incident and continued to do so after the incident without any problems (*cf. Penaranda v 4933 Realty, LLC*, 118 AD3d 596 [1st Dept 2014] [Bobcat overloaded with plywood requiring injured employee to ride on the back to act as a counterweight]; *Potter v Jay E. Potter Lbr. Co., Inc.*, 71 AD3d 1565 [4th Dept 2010] [forklift with operating capacity of 1,500 pounds insufficient to hoist 2,780-pound load]; *Bilderback v Agway Petroleum Corp.*, 185 AD2d 372, 373 [3d Dept 1992], *lv dismissed* 80 NY2d 971 [1992] [the plaintiff injured while riding forklift to provide counterweight because it "appeared wobbly and unsta-

ble"]). Further, plaintiff personally ascertained that the load was properly positioned and secured before proceeding to the scaffold. The fact that the prime mover was equipped to handle a 1,500 pound pallet of bricks has been conceded by plaintiff.

In *Runner v New York Stock Exch., Inc.* (13 NY3d 599, 602-603 [2009]), on which the majority purports to rely, liability was predicated on the failure to supply a pulley or hoist. The Court of Appeals went on to note: "it is generally agreed that the purpose of the strict liability statute is to protect construction workers not from routine workplace risks, but from the pronounced risks arising from construction work site elevation differentials, and, accordingly, that there will be no liability under the statute unless the injury producing accident is attributable to the latter sort of risk" (citing *Rocovich v Consolidated Edison Co.*, 78 NY2d 509, 514 [1991]).

Plaintiff's fall from the platform of the prime mover situated eight inches off the floor hardly represents "a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d at 603), let alone one of the "extraordinary elevation risks envisioned by Labor Law § 240 (1)" (*Rodriguez v Margaret Tietz Ctr. for Nursing Care*, 84 NY2d 841, 843 [1994]). As this Court has recognized, such a fall "did not result from the kind of gravity-related hazard that called for any protective devices of the type listed in Labor Law § 240 (1)" (*Bond v York Hunter Constr.*, 270 AD2d 112, 112 [1st Dept 2000], *affd* 95 NY2d 883 [2000] [fall while alighting from a tracked vehicle]; *Hargobin v K.A.F.C.I. Corp.*, 282 AD2d 31 [1st Dept 2001] [no protective device required to protect crane operator thrown from seat when boom snapped]).

Further, defendant's theory that plaintiff caused the accident by negligently raising the prime mover into the scaffolding is supported by the evidence presented, and does not address the issue of comparative negligence, as urged by the majority, but rather raises a question of fact as to whether plaintiff was the sole proximate cause of the accident. Indeed, unlike the cases relied on by the majority (*see e.g. Stankey v Tishman Constr. Corp. of N.Y.*, 131 AD3d 430 [1st Dept 2015]), here plaintiff was provided with all necessary safety devices and the devices were not defective.

While the majority would like to make comparative negligence the issue so as to avoid any consequences from plaintiff's actions, we are not dealing with comparative fault here. Rather, the evidence raises an issue as to whether plaintiff was the sole proximate cause of the accident which would preclude liability under Labor Law § 240 (1) (*see Weininger v Hagedorn &*

*Co.*, 91 NY2d at 960; *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d at 289-290). This Court has held that "[t]he 'sole proximate cause' exception precludes claims under section 240 (1) where the injured party is solely responsible for the accident" (*Perrone v Tishman Speyer Props., L.P.* 13 AD3d 146, 147 [1st Dept 2004] [citation omitted]). Further, the majority appears to assume a statutory violation simply because plaintiff was injured when he was allegedly "ejected" from the prime mover without considering proximate causation. From that stance, the majority then views any evidence of plaintiff's negligence as irrelevant and "of no consequence." However, contrary to the majority's assumption, there is no evidence of a statutory violation presented in this case. As detailed above, there was no proof that either the prime mover or the scaffolding were defective or inadequate to handle the work at issue. In fact, the evidence presented in this case appears to show that plaintiff's injuries were caused solely by his own negligence in the operation of the device. Nor does plaintiff argue that a hoisting device should have been provided to him, as the majority suggests. No evidence was offered to show that a hoisting device was even a proper equipment for plaintiff to perform his work at the time of his injuries.

The majority's reliance on *Penaranda v 4933 Realty, LLC* (118 AD3d at 596) and *Potter v Jay E. Potter Lbr. Co.* (71 AD3d at 1565) is inapposite since in those cases the forklift and bobcat provided were improperly overloaded whereas the undisputed evidence here established that the prime mover was capable of lifting the 1,500-pound pallet of bricks, a task for which it was routinely employed.

Moreover, the record reflects that there were witnesses to the accident including Louis Caratini, whom plaintiff specifically testified witnessed the accident, who may supply evidence to establish how the accident occurred, especially when plaintiff supplied no explanation as to how this incident occurred; thus, they should have been examined prior to entertaining and granting the motion (CPLR 3212 [f]). There is nothing in the record to support the majority's implication that Caratini was not available to testify. Rather, the record establishes that Caratini was subpoenaed for a deposition and the deposition could not proceed because, pursuant to the motion court's rules, discovery was stayed upon the filing of the summary judgment motion. Further, it is not mere "speculation" to suggest that testimony from an eyewitness could aid in establishing how the accident occurred, especially when plaintiff could not provide an explanation of the occurrence, and where his

purported negligence may be the sole proximate cause of the episode.

Finally, in reaching its conclusion that the accident was "gravity-related" and thus summary judgment to plaintiff was warranted, the majority stresses that plaintiff was "ejected" from the prime mover by a "catapult-type effect" and was then "slammed" onto the concrete floor of the site. However, this aspect of the accident is not dispositive and a focus on it evades the more relevant issues concerning whether plaintiff was the sole proximate cause of the accident. Instead, the proper focus should be on the evidence of *how* the accident occurred, which, at the very least, raises the possibility that plaintiff was ejected from the prime mover solely because he negligently raised the mover's forks into the scaffold, causing the mover to pitch forward.