| |
|---|
| **Stone v 321 W. 78th St. Corp.** |
| 2024 NY Slip Op 30031(U) |
| January 4, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 161854/2015 |
| Judge: Lynn R. Kotler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: <u>HON.LYNN R. KOTLER, J.S.C.</u>                    PART <u>8</u>

JENNIFER STONE, as Administrator of the Estate of          INDEX NO. 161854/2015
MARGARITO HERNANDEZ-MORENO, Deceased
                                                           MOT. DATE
            - v -
                                                           MOT. SEQ. NO. 5-10
321 WEST 78TH STREET CORP. et al

The following papers were read on this motion to/for _sj_ (seq 5)

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 158-187 |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 369-370, 415-429, 505, 538-541 |
| Replying Affidavits | ECFS Doc. No(s). 566-567 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 605 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 623 |
| 6/28/23 Transcript | ECFS Doc. No(s). 629 |

The following papers were read on this motion to/for _sj_ (seq 6)

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 234-238, |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 361, 430-444, 506, 517-518, 525, 536-537, 542-546 |
| Replying Affidavits | ECFS Doc. No(s). 598 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 606 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 624 |
| 6/28/23 Transcript | ECFS Doc. No(s). 630 |

The following papers were read on this motion to/for _sj_ (seq 7)

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 305-346 |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 362-364, 377-398, 445-507, 519-520, 527-529 |
| Replying Affidavits | ECFS Doc. No(s). 599 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 607 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 625 |
| 6/28/23 Transcript | ECFS Doc. No(s). 632 |

The following papers were read on this motion to/for _sj_ (seq 8)

| | |
|---|---|
| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 195-228 |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 229-233, 460-474, 508, 521-522, 533-535, 547-548 |

Dated: _1/4/24_

_____
**HON. LYNN R. KOTLER, J.S.C.**

**1. Check one:**                ☐ **CASE DISPOSED**   ☒ **NON-FINAL DISPOSITION**

**2. Check as appropriate: Motion is**   ☐ **GRANTED** ☐ **DENIED** ☒ **GRANTED IN PART** ☐ **OTHER**

**3. Check if appropriate:**        ☐ **SETTLE ORDER** ☐ **SUBMIT ORDER** ☐ **DO NOT POST**

                                    ☐ **FIDUCIARY APPOINTMENT** ☐ **REFERENCE**

[* 1]

| Replying Affidavits | ECFS Doc. No(s). 580-588 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 608 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 626 |
| 6/28/23 Transcript | ECFS Doc. No(s). 632 |

The following papers were read on this motion to/for sj (seq 9)

| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 239-277 |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 365, 475-489, 530-532, 549-551, |
| Replying Affidavits | ECFS Doc. No(s). 595, 596-597 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 609 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 627 |
| 6/28/23 Transcript | ECFS Doc. No(s). 633 |

The following papers were read on this motion to/for sj (seq 10)

| Notice of Motion/Petition/O.S.C. — Affidavits — Exhibits | ECFS Doc. No(s). 278-304 |
| Notice of Cross-Motion/Affirm in opp/Answering Affidavits — Exhibits | ECFS Doc. No(s). 366-368, 400—402, 490-504, 510, 523-524, 526, 552-559, |
| Replying Affidavits | ECFS Doc. No(s). 600-603 |
| 4/27/23 Interim Order | ECFS Doc. No(s). 610 |
| 6/14/23 Interim Order | ECFS Doc. No(s). 628 |
| 6/28/23 Transcript | ECFS Doc. No(s). 634 |

Motion sequence numbers 5 through 10 are hereby consolidated for the court's consideration and disposition in this single decision/order.

In this action, plaintiff Jennifer Stone is suing in her capacity as the Administrator of the Estate of Margarito Hernandez-Moreno, deceased (the "decedent"), who died after he was struck by falling debris in the rear courtyard of a residential apartment building located at 321 West 78th Street, New York, New York (the "building") on December 11, 2013. At the time of the decedent's accident, there were two construction/renovation projects happening at the building simultaneously: an elevator modernization project and a Local Law 11 façade renovation. Despite this work, there was no overhead protection installed in the rear courtyard which likely would have saved the decedent's life.

In connection with the two ongoing projects. there are two sets of contractors, subcontractors, and consultants/engineers. In motion sequence 5, defendant P.S. Marcato Elevator Co., Inc. ("Marcato"), which was hired to perform work in connection with the elevator modernization project, moves for summary judgment dismissing the third-party complaint asserted by defendants/third-party plaintiffs 321 West 78th Street Corp.'s ("321 West"), the building owner, and Halstead Management Company ("Halstead" and together with 321 West, the "321 West Defendants")), the property manager. Defendant Bellet Construction Co., Inc. ("Bellet"), which was hired to perform the façade renovation, and the 321 West Defendants oppose Marcato's motion

In motion sequence 6, defendant WLA Engineering, P.C. ("WLA"), which was retained to design engineering plans for the façade repair project, moves for summary judgment dismissing all claims seeking contribution and indemnity against it as well as on its crossclaims against Bellet for contractual indemnity and breach of contract for failure to procure insurance. Marcato opposes WLA's motion to the limited extent that WLA asserts in ¶ 37 of its counsel's affirmation that Marcato was the "general contractor" for the elevator modernization project. Defendant LSQ Contracting Corp. ("LSQ"), a subcontractor which was hired by Bellet to perform façade brickwork, opposes WLA's motion for summary judgment "to the extent that WLA, the facade project engineer, attempts to avoid blame for the failure to recommend installment of a sidewalk shed in the rear courtyard by relying on testimony that is in sharp dispute, and almost completely ignores the testimony of its own project engineer, Mike Lopez." Bellet opposes WLA's motion to the extent that WLA seeks summary judgment on its claims against Bellet, dismissal of Bellet's crossclaims for indemnification and/or contribution, issues concerning WLA's negli-

[* 2]

gence, status as the owner's agent and status as a proper Labor Law defendant. The 321 West Defendants also partially oppose WLA's motion to the extent that WLA asserts it was not responsible for the decedent's injuries.

In motion sequence 7, the 321 West Defendants move for summary judgment dismissing all claims asserted against them or alternatively granting them contribution and indemnification against Bellet, Marcato and LSQ. Marcato opposes the 321 West Defendants' motion to the extent that they seek relief against Marcato. New Accurate Const of NY Corp. ("New Accurate"), the decedent's employer and elevator subcontractor hired by Marcato, also opposes the 321 West Defendants' motion to the extent that the latter seeks summary judgment on their third third-party claims against New Accurate for common law indemnification. Second third-party defendant Sierra Consulting Group, Inc. ("Sierra"), a consultant on the elevator modernization project, opposes the 321 West Defendants' motion to the extent that the latter seeks contribution and/or indemnification from Sierra. Plaintiff, LSQ and Bellet also oppose the 321 West Defendants motion.

In motion sequence 8, Sierra moves for summary judgment dismissing the 321 West Defendants' second third-party Complaint against it as well as all crossclaims. Marcato opposes the motion to the extent that Sierra seeks summary judgment on its crossclaims against Marcato. Bellet opposes Sierra's motion "to the extent Sierra's motion relies on a finding that Bellet's negligence or violations of New York's Labor Law were proximate causes of the plaintiff's decedent's injuries and to the extent Sierra seeks a finding that it cannot be held liable as matter of law." The 321 West Defendants also oppose Sierra's motion.

In motion sequence 9, LSQ moves for summary judgment dismissing all claims and crossclaims against it. Against, Marcato only opposes LSQ's motion "to the extent that LSQ asserts in ¶¶ 5 and 45 of its counsel's affirmation that Marcato was the "general contractor" for an elevator modernization and maintenance work at the subject site." Plaintiff opposes LSQ's motion as to her complaint. Bellet opposes the motion to the extent that LSQ seeks summary judgment on LSQ's crossclaims over Bellet and dismissal of LSQ's crossclaims for indemnification and/or contribution. The 321 West Defendants also oppose LSQ's motion.

Finally, in motion sequence 10, Bellet moves for summary judgment in its favor. Marcato opposes Bellet's motion to the extent that Bellet seeks common law indemnification and contribution against Marcato. New Accurate opposes Bellet's motion to the extent that Bellet seeks common law indemnification against New Accurate. Plaintiff, LSQ and the 321 West Defendants also oppose Bellet's motion.

<u>Relevant facts</u>

The relevant facts, many of which are not in dispute, are as follows. In or about 2013, 321 West undertook renovation work at the building. 321 West retained Bellet to renovate the building façade, including pointing work and removing/replacing loose bricks. 321 West also retained Marcato to modernize the elevators inside the building.

New Accurate, an elevator subcontractor, was contracted by Marcato for the elevator modernization project. Moments before the underlying accident, the decedent, who was employed as a mechanic, was performing elevator pit excavation in the basement of the building. The decedent's accident occurred after he entered the rear courtyard, through an accessible door close to where he was working. Plaintiff's counsel asserts that the decedent entered the courtyard to dispose of excavation debris created by his work, pointing to deposition testimony from the decedent's boss. The date of the accident was the decedent's first day working at the project.

The decedent's accident was unwitnessed. According to New Accurate's witness, the decedent's coworker stated that there was a brick next to the decedent's body when he discovered him lying in the courtyard. Further, plaintiff's counsel points to evidence that the decedent was struck by a falling brick such as the police report, autopsy report, medical records, and "the uncontradicted expert opinion of

[* 3]

plaintiff's forensic pathologist, who opines that decedent's extensive skull fractures 'were most consistent with a high energy head trauma from a fallen object, such as a brick, from a significant height above.'"

There is no dispute that the rear courtyard of the building did not have a sidewalk bridge or similar overhead protection to guard against injury from falling objects. The parties dispute whether overhead protection was required in the rear courtyard before the accident. Nor was access to the rear courtyard blocked off to prevent entry by the decedent or anyone else not performing brickwork, although there is a dispute about what specific steps Halstead and/or 321 West took to warn/prohibit entry into the rear courtyard.

After the accident, both OSHA and the New York City Department of Buildings issued violations to the West 321 Defendants and Bellet for the lack of overhead protection and/or failure to block off access to the courtyard while the brickwork was being performed.

In connection with both ongoing projects at the building, the 321 West Defendants hired Sierra as a consultant on the elevator modernization Project. Sierra helped prepare plans, specs and project manuals, as well as assisted with the selection and bid process in connection with the elevator project, only. The 321 West Defendants also hired WLA, an engineering firm, to plan, manage and supervise the Local Law 11 facade work. There is a dispute about whether it was Halstead or WLA that advised the other that a sidewalk shed was not required in the rear courtyard. The 321 West Defendants maintain that it followed WLA's recommendation to not install a sidewalk shed. Meanwhile, WLA claims that since the rear courtyard was not a public area, overhead protection was not required and therefore not part of WLA's prepared scope of work.

In relation to Bellet's work, which included pointing work, removing and replacing loose bricks in the building's façade, and repairing the building's chimney, Bellet in turn hired LSQ as subcontractor. There is a dispute about the precise work, supervision and general scope of responsibilities attributable between Bellet and LSQ. Finally, there is a dispute about whether Halstead directed Marcato/New Accurate to remove debris from the building and place in the rear courtyard.

**Discussion**

The court will first consider the motions as to plaintiff's claims. On a motion for summary judgment, the proponent bears the initial burden of setting forth evidentiary facts to prove a prima facie case that would entitle it to judgment in its favor, without the need for a trial (CPLR 3212; *Winegrad v. NYU Medical Center*, 64 NY2d 851 [1985]; *Zuckerman v. City of New York*, 49 NY2d 557, 562 [1980]). If the proponent fails to make out its prima facie case for summary judgment, however, then its motion must be denied, regardless of the sufficiency of the opposing papers (*Alvarez v. Prospect Hospital*, 68 NY2d 320 [1986]; *Ayotte v. Gervasio*, 81 NY2d 1062 [1993]).

Granting a motion for summary judgment is the functional equivalent of a trial, therefore it is a drastic remedy that should not be granted where there is any doubt as to the existence of a triable issue (*Rotuba Extruders v. Ceppos*, 46 NY2d 223 [1977]). The court's function on these motions is limited to "issue finding," not "issue determination" (*Sillman v. Twentieth Century Fox Film*, 3 NY2d 395 [1957]).

Plaintiff has asserted Labor Law and common law negligence claims against the 321 West Defendants, Bellet and LSQ. The first question of law the court must address is whether the decedent is a proper worker protected by the Labor Law and whether the 321 West Defendants, Bellet and LSQ are proper Labor Law defendants.

The court rejects the 321 West Defendants' contention that the decedent was not a proper worker protected by the statute as a matter of law. Rather, the record reveals that the decedent was working at the time of his accident and thus was both employed and an employee within the meaning of the Labor Law. The decedent's presence in the rear courtyard is not dispositive to his Labor Law claims, as testi-

[* 4]

mony and evidence in the record supports the factual determination that the decedent was removing debris from the elevator excavation to the rear courtyard as he and/or New Accurate was directed and the 321 West Defendants have failed to meet their burden of establishing otherwise. Thus, it remains a triable issue of fact as to whether the decedent was authorized to work in the rear courtyard at the time of the accident and thus was a protected worker under the Labor Law (*Hoyos v. NY-1095 Avenue of the Americas, LLC*, 156 AD3d 491 [1st Dept 2017] [the Labor Law should be "construed with a commonsense approach to the realities of the workplace at issue" citing *Salazar v Novalex Contr. Corp.*, 18 NY3d 134, 140 (2011)]; *cf. Yagauchi v. Park City 3 and 4 Apartments, Inc.*, 185 AD3d 645 [2d Dept 2020]).

Further, the 321 West Defendants have failed to show that they are not proper Labor Law defendants. 321 West is a building owner and apart from a conclusory paragraph in its memorandum of law submitted in support of motion sequence 7, Halstead has not shown that it was not an agent of the 321 West for purposes of liability under Section 240[1] as a matter of law (*Walls v. Turner Constr. Co.*, 4 NY3d 861 [2005]).

As for Bellet, which argues that it too is not a proper Labor Law defendant, plaintiff maintains that it is nonetheless liable thereunder "as the contractor with authority to control the facade work, enforce safety standards and choose subcontractors". A party is a "contractor" for purposes of Labor Law liability if it has the power to enforce safety standards and choose responsible contractors (*Yagauchi*, *supra*). Whether a party is a contractor under the Labor Law may depend on the terms of the relevant contract (*Bart v. Universal Pictures*, 277 AD2d 4 [1st Dept 2000]). Bellet was contractually obligated to "take all steps necessary to protect tenants, guests and all other persons from injury" and to protect "openings, access and walkways" . . . "to avoid personal injury" to those present near the work site. Bellet also hired a subcontractor to install a sidewalk shed in front of the building. On these facts, Bellet is thus a proper Labor Law defendant.

LSQ also argues that it is not a proper Labor Law defendant, whereas plaintiff contends there are triable questions of fact as to whether LSQ was Bellet's statutory agent. The court agrees with plaintiff. Pursuant to its written subcontract with Bellet, LSQ agreed to "supervise and direct the Work, . . . [and] be solely responsible for all labor, materials, equipment, tools, taxes, expenses and other facilities used to accomplish or incurred in connection with the Work." LSQ also agreed "to observe and comply with . . . all applicable federal, state and local laws, ordinances, regulations bearing on the performance of the Work . . . including . . . any laws relating to health, safety, and the environment." Further, a jury must resolve issues of fact raised by conflicting deposition testimony from Bellet and LSQ's witnesses regarding each entity's role at the building and supervisory control over the façade work. Therefore, LSQ's motion on this point is denied.

Section 240[1]

Labor Law § 240[1], which is known as the Scaffold Law, imposes absolute liability upon owners, contractors and their agents where a breach of the statutory duty proximately causes an injury (*Gordon v. Eastern Railway Supply, Inc.*, 82 NY2d 555 [1993]). The statute provides in pertinent part as follows:

> All contractors and owners and their agents, … in the erection, demolition, repairing, altering, painting, cleaning or pointing of a premises or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed.

Labor Law § 240 protects workers from "extraordinary elevation risks" and not "the usual and ordinary dangers of a construction site" (*Rodriguez v. Margaret Tietz Center for Nursing Care, Inc.*, 84 NY2d 841 [1994]). "Not every worker who falls at a construction site, and not every object that falls on a

[* 5]

worker, gives rise to the extraordinary protections of Labor Law § 240(1)" (*Narducci v. Manhasset Bay Associates*, 96 NY2d 259 [2001]).

Section 240[1] was designed to prevent accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person (*Runner v. New York Stock Exchange, Inc.*, 13 NY3d 5999 [2009] quoting *Ross v. Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494 [1993]). The protective devices enumerated in Labor Law § 240 [1] must be used to prevent injuries from either "a difference between the elevation level of the required work and a lower level or a difference between the elevation level where the worker is positioned and the higher level of the materials or load being hoisted or secured" (*Rocovich v. Consolidated Edison Co.*, 78 NY2d 509 [1991]).

Here, plaintiff claims that the decedent was fatally struck when a brick fell during the course of ongoing façade work and struck plaintiff, and that the lack of appropriate overhead protections was a proximate cause of the accident. As plaintiff's counsel points out, it is undisputed that there were no overhead protections in place to protect plaintiff from the foreseeable risk of a brick or other debris emanating from the ongoing façade work falling down into the courtyard. On these facts, plaintiff has demonstrated a prima facie cause of action under Section 240[1]. The parties' arguments to the contrary are rejected.

Section 241[6]

Labor Law § 241[6] imposes a non-delegable duty on all contractors and owners, in connection with construction or demolition of buildings or excavation work, to ensure that:

> [a]ll areas in which construction, excavation or demolition work is being performed shall be so constructed, shored, equipped, guarded, arranged, operated and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places.

The scope of the duty imposed by Labor Law § 241[6] is defined by the safety rules set forth in the Industrial Code (*Garcia v. 225 E. 57th Owners, Inc.*, 96 AD3d 88 [1st Dept 2012] citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494 [1993]). Plaintiff must allege violations of specific, rather than general, provisions of the Industrial Code (*Rizzuto v. L.A. Wenger Contracting Co., Inc.*, 91 NY2d 343 [1998]). Plaintiff asserts that Industrial Code §§ 23-1.7[a][1] and [2] were violated as a matter of law. At the outset, plaintiff is deemed to have abandoned all alleged Industrial Code violations other than Sections 23-1.7[a][1] and [2] by failing to oppose defendants' motions on these claims.

Industrial Code § 23-1.7[a], entitled "Overhead hazards", states in pertinent part as follows:

> (1) Every place where persons are required to work or pass that is normally exposed to falling material or objects shall be provided with suitable overhead protection. Such overhead protection shall consist of tightly laid sound planks at least two inches thick full size, tightly laid three-quarter inch exterior grade plywood or other material of equivalent strength. Such overhead protection shall be provided with a supporting structure capable of supporting a loading of 100 pounds per square foot.

> (2) Where persons are lawfully frequenting areas exposed to falling material or objects but wherein employees are not required to work or pass, such exposed areas shall be provided with barricades, fencing or the equivalent in compliance with this Part (rule) to prevent inadvertent entry into such areas.

Defendants argues that the decedent was not authorized to be in the rear courtyard and/or was in the accident area through mere inadvertent entry. For the reasons already stated herein, there is a tria-

[* 6]

ble issue of fact as to whether the decedent was authorized to work in the rear courtyard at the time of the accident. If so, a jury may properly find that Sections 23-1.7[a][1] and/or 23-1.7[a][2] were violated. Further, the precise nature of the doors leading to the courtyard, whether they were closed/locked and had proper signage indicating access was prohibited has also not been established on this record. Accordingly, the defendants' motion as to the plaintiff's § 241[6] claims is granted only to the extent that all alleged Industrial Code violations other than Sections 23-1.7[a][1] and [2] are severed and dismissed.

Section 200 and common law negligence

Labor Law § 200 codifies the common law duty of owners and general contractors to provide workers with a reasonably safe place to work (*Comes v. New York State Elec. And Gas Corp.*, 82 NY2d 876 [1993]). There are two categories of Labor Law § 200 and common law negligence claims: injuries arising from dangerous or defective premises conditions and injuries arising from the manner or means in which the work was performed (*Cappabianca v. Skanska USA Bldg. Inc.*, 99 AD3d 139 [1st Dept 2012]). To demonstrate a *prima facie* case under the former category, a plaintiff must prove that the owner or general contractor created the condition or had actual or constructive notice of it (*Mendoza v. Highpoint Asoc., IX, LLC*, 83 AD3d 1 [1st Dept 2011]). Where the injury was caused by the manner of the work, the owner or general contractor will be liable if it exercised supervisory control over the work performed (*Foley v. Consolidated Edison Co. of N.Y., Inc.*, 84 AD3d 476 [1st Dept 2011]).

The court agrees with plaintiff that the decedent's accident was caused by a defective premises condition vis-à-vis lack of overhead protection and the failure to close off entry to the rear courtyard. The duty to provide a safe place to work includes the detection of dangers discoverable by reasonable diligence (*Lunde v. Nichols Yacht Sales, Inc.*, 143 AD2d 816 [2d Dept 1988]; *Caspersen v. La Sala Bros.*, 253 NY 491 [1930]). Ongoing façade work, including the removal and replacement of bricks, carries a reasonably foreseeable risk that one of the bricks might fall below. To the extent that the West 321 Defendants have not otherwise shown the lack of notice, and indeed, plaintiff has come forward with proof on the contrary, the 321 West Defendants are not entitled to dismissal of plaintiff's Section 200 claim.

As for Bellet and LSQ, neither is entitled to summary judgment dismissing the Section 200 claim either. In connection with each, the decedent's injuries were also caused by the manner or means in which the façade work was performed, and neither has shown that they did not exercise supervisory control over the injury-producing work that was performed such that dismissal as a matter of law is warranted. The court cannot resolve the disputed issues of fact raised between the testimony regarding supervision of the façade project between Bellet and LSQ's employees. Accordingly, defendants' motions on the section 200 claim are denied.

Crossclaims and third-party claims

The court now turns to the crossclaims and third-party claims. The 321 West Defendants seek contribution and contractual and common law indemnification from Bellet pursuant to 321 West's agreement with Bellet, which provides in pertinent part as follows.

> To the fullest extent permitted by law, Contractor shall indemnify and hold harmless Owner and its agents and employees, Halstead Management Co., Inc., and its agents and employees...from and against all claims, damages, losses and expenses arising out of or resulting from the performance of the work, including but not limited to....bodily injury...death and injury to persons or property, provided that such claim, damage, loss or expense is caused in whole or in part by any negligent act or omission of Contractor, any subcontractor, anyone directly or indirectly employed by any of them.....

The 321 West Defendants also seeks contribution and contractual and common law indemnification from Marcato pursuant to 321 West's agreement with the latter, which states in relevant part:

[* 7]

> To the fullest extent permitted by law, Contractor shall indemnify and hold harmless Owner and its agents and employees, Halstead Management Co., LLC, and its agents and employees....from and against all claims, damages, losses and expenses arising out of or resulting from the performance of the work...provided that such claims, damages, loss or expense is caused in whole or in the part of negligent act or omission of Contractor, any subcontractor, anyone directly or indirectly employed by any of them or anyone for whose acts any of them may be liable.....

"Contribution is available where two or more tortfeasors combine to cause an injury and is determined in accordance with the relative culpability of each such person" (*Godoy v Abamaster of Miami*, 302 AD2d 57, 61 [2d Dept 2003], *lv dismissed* 100 NY2d 614 [2003] [internal quotation marks and citations omitted]).

"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (*Drzewinski v Atlantic Scaffold & Ladder Co.,* 70 NY2d 774, 777 [1987], quoting *Margolin v New York Life Ins. Co.,* 32 NY2d 149, 153 [1973]; *see also Tonking v Port Auth. of N.Y. & N.J.*, 3 NY3d 486, 490 [2004]). However, "General Obligations Law § 5-322.1 prohibits and renders unenforceable any promise to hold harmless and indemnify a promisee which is a construction contractor or a landowner against its own negligence" (*Kilfeather v Astoria 31st St. Assoc.*, 156 AD2d 428 [2d Dept 1989]).

"To establish a claim for common-law indemnification, 'the one seeking indemnity must prove not only that it was not guilty of any negligence beyond the statutory liability but must also prove that the proposed indemnitor was guilty of some negligence that contributed to the causation of the accident'" (*Perri v Gilbert Johnson Enters., Ltd.,* 14 AD3d 681, 684-685 [2d Dept 2005], quoting *Correia v Professional Data Mgt.,* 259 AD2d 60, 65 [1st Dept 1999]).

The 321 West Defendants' motion is denied as to their crossclaims/third-party claims for contribution and common law indemnification against Bellet and Marcato. Neither 321 West nor Halstead has shown that they are free from negligence insofar as there is a dispute about who decided whether to install overhead protection in the rear courtyard prior to plaintiff's accident while ongoing façade work was taking place and access to the rear courtyard was not properly restricted.

As for the 321 West Defendants' claim for contractual indemnification against Bellet, that branch of the motion is also denied. Both Bellet and Marcato's contractual indemnification provisions provide that Bellet and Marcato will indemnify and hold harmless the 321 West Defendants from and against all claims arising out of or resulting from the performance of their respective work provided that such claims are caused in whole or in part by any negligent act or omission of each contractor or any subcontractor.

Dropping a brick constitutes negligent performance of Bellet and/or LSQ's façade work, and there is no other evidence in this record that anyone but a Bellet or LSQ employee dropped the brick. Bellet, however, argues that the 321 West Defendants' claim for contractual indemnification should be dismissed because the relevant contractual provision violates GOL § 5-322.1[1], which provides as follows:

> A covenant, promise, agreement or understanding in, or in connection with or collateral to a contract or agreement relative to the construction, alteration, repair or maintenance of a building, structure, appurtenances and appliances including moving, demolition and excavating connected therewith, purporting to indemnify or hold harmless the promisee against liability for damage arising out of bodily injury to persons or damage to property contributed to, caused by or resulting from

[* 8]

the negligence of the promisee, his agents or employees, or indemnitee, whether such negligence be in whole or in part, is against public policy and is void and unenforceable.

It remains an issue of fact as to whether the 321 West Defendants are negligent in the happening of the decedent's accident, insofar as there is evidence that 321 West decided not to install overhead protection in the rear courtyard and Halstead directed that debris be placed in the rear courtyard and/or failed to condone the accident area off. Since these issues of fact remain, the question of whether the 321 West Defendants' contractual indemnification provision violates GOL § 5-322.1[1] cannot be determined at this juncture, since a jury could reasonably determine that the 321 West Defendants were not negligent and their liability is only statutory, rather than arising from a negligent act. Therefore, the 321 West Defendants are not entitled to summary judgment on their contractual indemnification claim from Bellet nor is Bellet entitled to summary judgment dismissing same.

The court also agrees with Marcato that the 321 West Defendants have failed to establish as a matter of law that Marcato improperly instructed the decedent and/or New Accurate to place debris in the rear courtyard or otherwise failed to prevent the decedent from accessing same. Since the 321 West Defendants have otherwise failed to establish that Marcato and/or New Accurate committed a negligent act or omission from which plaintiff's accident arose, the 321 West Defendants' motion as to their contractual indemnification crossclaim against Marcato is also denied.

To the extent that the 321 West Defendants seek contribution and/or common law indemnification against New Accurate, which they do not specifically argue in their motion but which New Accurate offers substantive opposition, the motion is denied for the reasons already stated herein.

Next, Marcato and Sierra seek summary judgment dismissing the 321 West Defendants third-party complaint against it. Marcato's motion is granted. The only allegedly negligent act asserted by the 321 West Defendants is Marcato and/or its subcontractor's failure to advise the decedent to not use the rear courtyard to store debris and/or direction to use the rear courtyard. The court agrees with Marcato that the failure to advise decedent to not use the rear courtyard does not support a claim for contribution or common law indemnification as such an act is too attenuated from the alleged acts of negligence at issue (*see i.e. Anton v. West Manor Constr. Corp.*, 100 AD3d 523 [1st Dept 2012]). Assuming *arguendo* that PS Marcato did owe a duty of care, no act or omission on its part caused the accident. Marcato was not involved with the façade work. Marcato did not have responsibility or exercise control over the rear courtyard. Rather, it was the worker who dropped the brick and lack of overhead protection which caused the decedent's accident.

The 321 West Defendants' contract-based claims against Marcato are also severed and dismissed. The relevant indemnification provision limits Marcato's obligation to accidents "caused by" a contractor rather than "arising out of". The court agrees that the facts on this record do not support a determination that Marcato caused the decedent's accident. Finally, Marcato has demonstrated without opposition that it obtained the requisite insurance; therefore it is entitled to dismissal of the 321 West Defendant's breach of contract for failure to procure insurance claim.

Sierra, a consultant on the elevator modernization project which helped prepare plans, specs and project materials, as well as helped with the selection and bid process, has shown that it did not supervise New Accurate employees, including the decedent, nor did it have any role in connection with the façade work. Further, Sierra was not contractually obligated to indemnify the 321 West Defendants and it has otherwise established that it played no role in debris removal. To the extent that the 321 West Defendants argue Sierra's responsibility to ensure site safety should have encompassed debris removal fails. As Sierra's counsel pointed out at oral argument, Sierra's contract did not include day-to-day site safety monitoring. Sierra was an architect and/or consultant on the elevator modernization project. If the 321 West Defendants wanted a site safety inspector, they should have hired one. Just because Sierra had a role in connection with the project does not make it necessarily responsible for day-to-day site safety including monitoring where debris from the elevator pit excavation was being stored. Therefore,

[* 9]

Sierra's motion is granted and the second third-party complaint against it is severed and dismissed. However, Sierra's catchall request seeking dismissal of all other unspecified crossclaims is denied. It is not the court's responsibility to sift through the pleadings to determine the specific crossclaims that Sierra would like to have dismissed, nor does such a provision provide appropriate notice to party against which Sierra would seek relief. Accordingly, Sierra's motion is granted only to the extent that the second third-party complaint against it is severed and dismissed.

WLA seeks dismissal of all claims for contribution and indemnity against it, as well as summary judgment in its favor on its crossclaims against Bellet for contractual indemnity and breach of an agreement to procure insurance. The 321 West Defendants' contract-based claims are severed and dismissed, as WLA has established without opposition that WLA was not obligated to indemnify the 321 West Defendants nor procure specific insurance. The balance of WLA's motion must, however, be denied. Contrary to WLA's contention, the record does not support a determination as a matter of law that the rear courtyard was not accessible to the public and thus did not require a sidewalk shed or other overhead protection. It remains a triable issue of fact whether WLA was advised by the West 321 Defendants that the area was closed off and thus WLA had "no knowledge or reason to believe that workers would seek to access the rear courtyard." Indeed, it was open knowledge that debris and garbage were stored in the courtyard before the project work was commenced.

LSQ seeks summary judgment dismissing the 321 West Defendants contractual claims against it. That branch of the motion is granted without opposition. LSQ further seeks summary judgment dismissing Bellet's claims for contractual indemnification and breach of contract for failure to procure insurance, arguing that there was no valid contract and even if there was, the contract would violate GOL § 5-322.1[1]. Here, the court agrees with LSQ that it has met its burden and established that the service agreement between Bellet and LSQ is not valid and enforceable: Bellet's witness admitted his secretary signed the agreement and otherwise did not recall specific facts about the execution of same or the contents thereof. Meanwhile, LSQ's witness testified that he was not presented with the entire service agreement upon which Bellet's contract-based claims are based, including the portions containing the relevant indemnification and insurance provisions. In turn, Bellet has failed to raise a triable issue of fact on this point. Accordingly, LSQ is granted summary judgment dismissing Bellet's contract-based crossclaims against it. Finally, LSQ seeks summary judgment on the contribution and common law indemnification claims as well, presumably those asserted by the 321 West Defendants and Bellet. This branch of the motion is denied for the reasons already stated herein. Relatedly, the court rejects LSQ's argument that it should not be held liable for one of its workers dropping a brick simply because the decedent's accident was also caused by the absence of overhead protection. There can be more than one negligent cause of an accident. Otherwise, the precise nature of the relationship between Bellet and LSQ remains to be determined at trial.

Bellet seeks summary judgment dismissing the 321 West Defendants' crossclaim for failure to procure insurance and the latter has failed to oppose this branch of Bellet's motion. Therefore, the 321 West Defendant's crossclaim for breach of contract for failure to procure insurance is severed and dismissed without opposition. Contrary to Bellet's contention, it has not established that the 321 West Defendants caused injury to the decedent arising out of Local Law 11 repair debris rather than Bellet. Therefore, Bellet's motion for summary judgment dismissing the remainder of the crossclaims against it is denied.

Since LSQ agreed to indemnify Bellet for losses arising out of their subcontract work, Bellet is entitled to indemnification. Bellet is also entitled to damages for LSQ's breach of contract for failing to procure insurance.

[* 10]

**CONCLUSION**

In accordance herewith, it is hereby:

**ORDERED** that Marcato's motion is granted to the extent that the 321 West Defendants' third-party complaint against Marcato is severed and dismissed; and it is further

**ORDERED** that WLA's motion is granted to the extent that the 321 West Defendants' contract-based claims against it are severed and dismissed; and it is further

**ORDERED** that the West 321 Defendants, Bellet and LSQ's motions for summary judgment as to plaintiff's claims are granted only to the extent that all alleged Industrial Code violations other than Sections 23-1.7[a][1] and [2] are severed and dismissed; and it is further

**ORDERED** that Sierra's motion is granted to the extent that the second third-party complaint against it is severed and dismissed; and it is further

**ORDERED** that LSQ's motion is granted to the extent that the 321 West Defendants' and Bellet's contract-based crossclaims against it are severed and dismissed; and it is further

**ORDERED** that Bellet's motion is otherwise granted to the extent that the 321 West Defendant's crossclaim for breach of contract for failure to procure insurance against Bellet is severed and dismissed without opposition.

Any requested relief not expressly addressed herein has nonetheless been considered and is hereby expressly rejected and this constitutes the decision and order of the court.

Dated:     1/4/24
          New York, New York

So Ordered:

_____
**Hon. Lynn R. Kotler, J.S.C.**

[* 11]